UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| PENNY QUINTEROS, | CASE NO. C19-1402 RSM |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS |
| v. | |
| INNOGAMES, et al., | |
| Defendants. | |

## I.  INTRODUCTION

This matter is before the Court on Defendant Jule [*sic*] Blan's Second Motion to Dismiss. Dkt. #29. The Court previously denied Ms. Blan's request for dismissal because her legal arguments were underdeveloped until her reply when Plaintiff, proceeding *pro se*, was unable to respond. Dkt. #28 at 6. The Court specified that the denial was "without prejudice to refiling." *Id*. at 7. On this round of briefing, Plaintiff has had the opportunity to address Ms. Blan's arguments and opposes the Motion. Dkt. #30. Neither party requested oral argument[1] and the

---

[1] Plaintiff did request oral argument in her surreply. Dkt. #32. However, the Court's local rules make clear that "[a] party desiring oral argument shall so indicate by including the words 'ORAL ARGUMENT REQUESTED' in the caption of its motion or responsive memorandum." LCR 7(b)(4). Plaintiff's surreply-request—a filing the Court need not and does not consider—, even if proper, is untimely.

ORDER – 1

Court finds oral argument unnecessary to resolve the Motion. Local Rules W.D. Wash. LCR 7(b)(4); *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (court may deny request for oral argument when parties submit briefs to the court). Having considered the briefing and the remainder of the record, and for the following reasons, the Court grants the motion.

## II.     BACKGROUND

Defendant InnoGames—a German business entity—created an online video game known as "Forge of Empires." Dkt. #3 at 6. Plaintiff does not detail the gameplay mechanics but makes clear that there is significant interaction between online players within the game. Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play." *Id.* Plaintiff maintains that the game is psychologically addictive and that she became psychologically dependent or addicted. *Id.* at 8. Plaintiff alleges that instead of warning players of the addictive nature of the game, InnoGames exploited players with "micro-transactions."[2] *Id.*

Relying on representations made by InnoGames that the game presented a "level playing field," Plaintiff sought to excel at the game. *Id.* at 9–10. Her dependence on the game and desire to progress further resulted in her spending over $9,000 on micro-transactions to "keep up" with players she now believes were cheating. *Id.* at 8–10. While continuing to make a significant investment of time and money into the game, Plaintiff experienced numerous unpleasant social interactions while playing. *Id.* at 7–11. In fact, Plaintiff faced repeated harassment from multiple individuals because of her gender. *Id.* Plaintiff believes that this occurred, at least in part, because InnoGames advertised the game in a manner which "created an unsafe environment for women players." *Id.* at 6–7.

---

[2] Plaintiff indicates that the micro-transactions are purchases of in-game items that allow the player to "advance in the game faster." Dkt. #3 at 8–10.

ORDER – 2

Plaintiff reported her continued harassment to InnoGames and at least some of the individual defendants.[3] Plaintiff believes that the harassment violated InnoGames' terms and conditions for playing Forge of Empires. But the defendants did nothing to prevent the harassment and the harassment continued unabated. *Id.* at 7–11. Plaintiff believes that instead of acting to protect her, defendants discriminated against her, enforcing rules disproportionately against her because of her gender, changing rules, and enforcing certain rules against her alone. *Id.* at 10–11.

Because of her experiences, Plaintiff alleges that "she has suffered extreme and serious emotional distress and depression, [] has been unable to function independently, [] has suffered psychological trauma, [and] has emotional symptoms of depression, anxiety, [and] thoughts of suicide." *Id.* at 12. Plaintiff ultimately seeks recovery for physical and emotional damages, loss of reputation, economic harms, and violations of consumer protection laws. *Id.* at 12–13. Plaintiff's Complaint seeks relief under several legal theories:

> (I) Gross Negligence; (II) Negligence; (III) Reckless Misconduct; (IV) Fraud; (V) Misrepresentation/Deceit; (VI) Unfair and Deceptive Trade Practices; (VII) Gender Discrimination in Public Accommodation; (VIII) Defamation/Libel/ Slander; (IX) Loss of Reputation; (X) Intentional Infliction of Emotional Distress; [and] (XI) Negligent Infliction of Emotional Distress.

*Id.* at 5.

### III.   DISCUSSION

**A. Legal Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

---

[3] Plaintiff names Hendrik Klindworth, Chief Executive Officer of InnoGames, Michael Zillmer, Chief Operating Officer of InnoGames, Julie (Jill) Blan, a "United States Community Manager" for InnoGames, and Richard Stephenson, an "International Community Manager" for InnoGames. Dkt. #3 at 2–3. Plaintiff does not attribute specific actions to individual defendants.

ORDER – 3

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P. 8(a)(2). While considering a Federal Rule of Procedure 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The court is not required, however, to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

**B. Plaintiff's Claims Are Appropriately Dismissed**

Ms. Blan's first objection is to Plaintiff's use of "group pleading" in the Complaint. As Ms. Blan explains, Plaintiff does not specify to which defendant she attributes each action alleged

ORDER – 4

1  and instead attributes all actions to "Defendant(s)" generally.  Dkt. #29 at 3.  Plaintiff argues that

2  her use of group pleading is supported by *Wool v. Tandem*, 818 F.2d 1433 (9th Cir. 1987),

3  because the individual defendants "are a narrowly defined group in control of a public entity."

4  Dkt. #30 at 4 (quoting *Wool*, 818 F.2d at 1141–1142).  But, as Defendant notes, *Wool* was a

5  securities fraud action naming a company's "President/Chief Executive, Senior Vice

6  President/Chief Operating Officer, and Vice President/Controller."  Dkt. #31 at 1–2; *Wool*, 818

7  F.2d at 1140.  Here Plaintiff sues InnoGames, two executive officers, and two "Community

8  Managers."  Dkt. #3 at 2–3.  Plaintiff does not explain what specific role Ms. Blan, a Community

9  Manager, played in the events giving rise to her claims.  Plaintiff does not indicate the

10 responsibilities of a Community Manager generally or how Plaintiff interacted with the

11 Community Managers.[4]

12        The only action that Plaintiff directly attributes to a community manager—presumably

13 Ms. Blan—is "lax" enforcement of rules against other players and a focus on punishing Plaintiff

14 when she complained of their efforts.  *Id.* at 7–8.  Even after relying on inferences in favor of

15 Plaintiff, she alleges primarily that Ms. Blan failed to protect her from harassment within the

16 game and on the internet.  *Id.* at 7–11.  In her briefing, Plaintiff argues more broadly that Ms.

17 Blan "designed, produced, managed and distributed Forge of Empires and that she as the

18 community manager was lax in her punishment of other players among the other activities

19 factually described in the complaint and attributable to the defendants."  Dkt. #30 at 4.  But the

20 argument does not help the Court across "the line between possibility and plausibility of

21 entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557).  Is it

---

[4] Further adding to the Court's confusion, Plaintiff draws a distinction between moderators and community managers.  Dkt. # Dkt. #3 at 7–8 ("game moderators and community manager were lax . . .").

ORDER – 5

possible that a "United States Community Manager" with frequent customer interaction is responsible for a German company's design, production, management, and distribution of a video game? Perhaps, but common sense precludes the Court from finding such an allegation plausible. Plaintiff presents no other theory upon which to hold Ms. Blan responsible for actions that are more appropriately attributed to InnoGames and its executives. Ms. Blan is the only party before the Court and the Court accordingly focuses on the actions that are properly attributed, relying on common sense and judicial experience, to Ms. Blan as the United States Community Manager for InnoGames.

As noted, Plaintiff primarily complains that Ms. Blan did not protect her from ongoing harassment. But Plaintiff does not plead any facts establishing that Ms. Blan had a duty to protect her from harassment. *Burg v. Shannon & Wilson, Inc.*, 110 Wash. App. 798, 804, 43 P.3d 526, 530 (2002) (noting that "actionable negligence" requires duty, breach, injury, and causation). Under Washington law, "a defendant's duty may be predicated on violation of statute or of common law principles of negligence." *Id.* citing (*Bernethy v. Walt Failor's, Inc.*, 97 Wash. 2d 929, 932, 653 P.2d 280 (1982)). Plaintiff does not point to any statutory[5] or common law duty requiring Ms. Blan to protect Plaintiff from ongoing harassment by third-parties in a video game." *See* 16 WASH. PRAC., TORT LAW AND PRACTICE § 2:6 (4th ed.) (noting general lack of duty to prevent harm absent inducement, a special relationship, or a statutory duty); *Id.* at § 2.8 ("Awareness of the danger faced by another and [one's need for] protection does not by itself

---

[5] Plaintiff cites to the Washington Law Against Discrimination and a provision declaring a civil right "to be free from discrimination because of . . . sex . . .," including "full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." WASH. REV. CODE § 49.60.030(1), (1)(b). But, whatever the implications of such a civil right, Plaintiff does not indicate why Ms. Blan should be held accountable and not InnoGames—the purveyor of the "place of public resort, accommodations, assemblage, or amusement."

ORDER – 6

create a duty of care.") (citing *Hopovac v. State Dep't of Corr.*, 197 Wash. App. 817, 822, 391 P.3d 570, 573 (2017)). Plaintiff also does not explain why any such duty or contractual obligation falls upon Ms. Blan and not InnoGames. *Nivens v. 7-11 Hoagy's Corner*, 133 Wash. 2d 192, 943 P.2d 286 (1997), *as amended* (Oct. 1, 1997) (noting duty of care owed by business owner to customers). Accordingly, Plaintiff's negligence claims—reckless conduct, negligence, and gross negligence—must be dismissed.

Plaintiff's negligent infliction of emotional distress and intentional infliction of emotional distress claims likewise fail. As noted above, Plaintiff does not establish that Ms. Blan acted negligently, destroying any claim for negligent infliction of emotional distress. *See Bylsma v. Burger King Corp.*, 176 Wash. 2d 555, 560, 293 P.3d 1168, 1170 (2013) (recovery "in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of *the negligent conduct*, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology") (emphasis added, citation omitted). Plaintiff's intentional infliction claim requires her to plead "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of emotional distress." *Spicer v. Patnode*, 443 P.3d 801, 807 (Wash. Ct. App. 2019) (quotation marks and citation omitted). But Plaintiff alleges only that Ms. Blan was lax in punishing other players for infractions and instead punished Plaintiff. With nothing more, the Court is not able to say that inconsistent application of terms and conditions in an online video game is "extreme and outrageous conduct." *See Kloepfel v. Bokor*, 149 Wash. 2d 192, 196, 66 P.3d 630, 632 (2003) (outrage "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (quotation marks and citation omitted). Plaintiff's claims for emotional distress are dismissed.

ORDER – 7

The Court will likewise dismiss Plaintiff's defamation/libel/slander and loss of reputation claims. Plaintiff presents the Court nothing demonstrating an actionable claim for "loss of reputation" outside of defamation. And defamation requires a false statement, either written (libel) or spoken (slander). *Caruso v. Local Union No. 690*, 107 Wash. 2d 524, 529, 730 P.2d 1299, 1302 (1987). Because Plaintiff does not establish that any statements are attributable to Ms. Blan, Plaintiff has not adequately stated claims for defamation.

As noted above, Plaintiff's remaining claims—fraud[6] and misrepresentation/deceit, unfair and deceptive trade practices, and gender discrimination in public accommodation—are not appropriately attributed to Ms. Blan and those claims are accordingly dismissed as to her.

**C. Leave to Amend**

Where the Court dismisses for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (leave to amend should be granted "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment").

Here, Plaintiff specifically requests an opportunity to replead her claims. Dkt. #30 at 2. The Court cannot yet say that amendment would be futile. *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1128 (D. Nev. 2019) ("Amendment is futile only if no set of facts can be proven under the amendment that would constitute a valid and sufficient claim.") (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Plaintiff is granted leave to amend her Complaint, consistent with this Order.

---

[6] The parties do not address whether the Complaint is adequately stated with regards to the specific pleading requirements of Federal Rule of Civil Procedure 9(b).

ORDER – 8

**D. Plaintiff's Surreply**

After Ms. Blan filed a reply in support of her motion to dismiss, Plaintiff filed a surreply. Dkt. #32. This Court's Local Civil Rules allow surreplys for the limited purpose of requesting that the court strike material contained in or attached to a reply brief. LCR 7(g). Any surreply must "be strictly limited to addressing the request to strike. Extraneous argument or a surreply filed for any other reason will not be considered." LCR 7(g)(2). Plaintiff's surreply merely makes further argument in support of her position and attempts to bring new factual allegations before the Court. *See* Dkt. #32. Accordingly, the Court does not consider Plaintiff's improper surreply.

## IV.    CONCLUSION

Having considered Ms. Blan's motion, the related briefing, and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendant Jule [*sic*] Blan's Second Motion to Dismiss (Dkt. #29) is GRANTED.
2. Plaintiff, if she chooses, is granted leave to file an amended complaint, consistent with this Order and curing the above-specified deficiencies, no later than thirty (30) days from the date of this Order.

Dated this 1st day of July, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 9