UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS,<br><br>     Plaintiff,<br><br> v.<br><br>INNOGAMES, et al.,<br><br>     Defendants. | CASE NO. C19-1402RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## I.   INTRODUCTION

This matter comes before the Court on Defendants Innogames GmbH, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson's Motion to Dismiss under Rule 12(b)(6).  Dkt. #64.  Plaintiff Penny Quinteros opposes and has requested oral argument. Dkt. #76.  The Court has determined oral argument is unnecessary and that it can rule based on the existing record.  For the reasons stated below, the Court GRANTS Defendants' Motion and dismisses this case.

## II.   BACKGROUND

The Court has previously granted a motion to dismiss in this case with leave for Plaintiff to amend.  Dkt. #34.  For purposes of this Motion to Dismiss, the Court will accept all facts in

the Amended Complaint, Dkt. #52, as true. The Court has also considered the exhibits filed by Plaintiff with her Amended Complaint. *See* Dkts. #54 and #57. The Court will briefly summarize the relevant facts.

Plaintiff Defendant InnoGames—a German business entity—created an online video game known as "Forge of Empires." Dkt. #52 at 11. The individual Defendants are officers and employees of InnoGames. *Id*. at 11–12. Forge of Empires is played via an internet browser or mobile app. The person playing the game (a "user" or "player") builds a city starting in the Stone Age and progressing through history. There is significant interaction between online players within the game over chat and other message systems. *Id*. at 14. Forge of Empires is free to play but includes obstacles to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases. The in-game currency, "diamonds," is purchased in the game via AmazonPay, Paypal, or a direct credit-card purchase. Plaintiff alleges that Forge of Empires "is designed to promote excessive game-play by penalizing infrequent play." *Id*. The evidence of this is:

> …instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

*Id.* at 14–15.

Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play." *Id*. at 16.

ORDER GRANTING MOTION TO DISMISS - 2

Plaintiff maintains that the game is psychologically addictive and that she became psychologically dependent or addicted. *Id.* at 39. Plaintiff alleges that instead of warning players of the addictive nature of the game, InnoGames exploited players with "micro-transactions." *Id.* Relying on representations made by InnoGames that the game was fair, Plaintiff sought to excel at the game. Her dependence on the game and/or desire to progress resulted in her spending over $9,000 on micro-transactions. *Id.* at 34.

Around July of 2016 Plaintiff began experiencing gender-based harassment from other players, including some she alleges "were secretly InnoGames staff moderators." *Id.* at 18. These players and/or staff members accused Plaintiff of being a man and started to solicit Plaintiff's online friends and co-players to no longer engage with her socially or for game activities. *Id.* Plaintiff pleads:

> These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

*Id.* Plaintiff alleges that Defendants were involved in continued harassment through their efforts as moderators of the game's chat feature. *See, e.g., id.* at 21 ("Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff."). Statements made by other players to Plaintiff included ""what you are is a dumb sluuuuut,""butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps sending them photos." *Id.* Plaintiff alleges she has been targeted by unnamed moderators "because she doesn't display 'typical female' behavior." *Id.* at 20. A game moderator accused Plaintiff of having a "vulgar upbringing." Other game moderators accused Plaintiff of "drama"

or allowing her emotions to run high. *Id.* at 22.  Plaintiff pleads that moderators are generally players who have applied for and been selected as "volunteer" customer service agents.  Although moderators are termed "volunteers" by InnoGames, they are compensated with premium game features and in-game currency making them InnoGames staff members. *Id.* at 20.

Plaintiff believes that the above behavior occurred, at least in part, because InnoGames advertised the game in a manner which "created an unsafe environment for women players." *Id.* at 22.

Plaintiff reported her continued harassment to InnoGames and at least some of the individual Defendants.  Plaintiff believes that the harassment violated InnoGames' terms and conditions for playing Forge of Empires.[1]  But the Defendants failed to prevent the harassment.  Plaintiff believes that instead of acting to protect her, Defendants discriminated against her, enforcing rules disproportionately against her because of her gender, changing rules, and enforcing certain rules against her alone.

In reporting this harassment, Plaintiff, for whatever reason, also engaged in harassing and offensive language.  This is demonstrated in her own attachment to the Amended Complaint.  Examples of harassment are highlighted by Defendants:

> Among the profane attacks Plaintiff made on InnoGames moderators and managers, were statements such as "F**k that, give me the number you dirty mother f***ing rancid p***y licking f**k". Dkt. #54 at 264 (asterisks added). Plaintiff threatened to change her username to 'Pancea3 s**ks d'…" Dkt. #54 at 374 (asterisks added). In perhaps her most profane and offensive attack on support staff, Plaintiff wrote "YOU are a dirty filthy b**ch. You f**king get down on your knees and s**k the rancid d**ks of

---

[1] Forge of Empires operates under game-specific terms and conditions, community standards, and in-game rules. Moderators explained to Plaintiff how InnoGames handles rule violations: players are first given warnings, and each warning gives them six "points."  Once a player has acquired twenty-four points, they are given a temporary ban.  Dkt. #54 at 281, 311.

> other players. Or let them shove their fists up you're a\*\*s because you don't have a single brain-cell left. Apparently there is quite seriously a thing as being "f\*\*ked stupid." You're living proof."
> *Id*. at 1350 (asterisks added).

Dkt. #64 at 8–9.  This is language directed at Innogames support staff—not other players—through an online customer support system.  Responding to that last "down on your knees" example, Innogames support staff stated "[w]e have, repeatedly, asked you not to curse or verbally abuse our team…. whilst as a customer you have a right to service, you don't have a right to verbally abuse our team under any circumstances…. To draw a real world comparison, if you walked in to your local grocery store and verbally abused staff, the management has the right to remove you from their premises."  Dkt. #54 at 1350-51.  Eight minutes later, Plaintiff wrote, "I have not, once verbally abused any member of your team. On the other hand you have, repeatedly asked me to modify my mode of address to a form of power as a method of silencing my rights as a woman. [citation to a Dame Magazine article]…. This is your final warning." *Id*. at 1351.  The argument between Plaintiff and customer support continues for several pages.

The Amended Complaint brings causes of action for negligence, gross negligence, willful or wonton conduct; defamation/libel/slander and loss of reputation; intentional/negligent infliction of emotional distress; "gender discrimination in public accommodation;" fraud, misrepresentation/deceit, unfair and deceptive trade practices; product liability; breach of contract, third-party breach of contract, promissory estoppel; copyright infringement and privacy violations, and gender discrimination in employment. Dkt. #52.  She seeks "Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws," as well as statutory and punitive damages and other unspecified damages.  *Id*. at 53.

ORDER GRANTING MOTION TO DISMISS - 5

Defendants move to dismiss all of Plaintiff's claims under Rule 12(b)(6). Dkt. #64.[2]

### III. DISCUSSION

**A. Legal Standard under Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

//

//

---

[2] Defendants have also moved for dismissal based on lack of personal jurisdiction. Dkt. #64 at 9–13. The Court finds that it need not address this argument as dismissal of all claims is appropriate under Rule 12(b)(6). The Court has not considered the Declaration of Hendrik Klindworth, Dkt. #78, and finds that the Motion to Exclude that declaration, Dkt. #80, is therefore moot.

B. Analysis

### 1. Section 230 of the Communications Decency Act

As an initial matter, Defendants cite to Section 230 of the Communications Decency Act as applicable to this case. Dkt. #64 at 13 ("Plaintiff's online tort claims, detailed below, must be dismissed with prejudice as to InnoGames and the Individual Defendants because her claims are foreclosed by Section 20 of the Communications Decency Act, 47 U.S.C. § 230"). Courts have construed the immunity provisions in § 230 broadly to cover all claims arising from the publication of user-generated content. *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018, 1030-31 & n. 19 (9th Cir. 2003); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 984-86 (10th Cir. 2000); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997). Defendants also argue they are immune from Plaintiff's claims related to their restriction of her access to Forge of Empires in an effort to prevent her from publishing "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" content. Dkt. #64 at 14 (citing 47 USC § 230(c)(2)(a)).

The Court finds that Section 230 of the Communications Decency Act does apply to the facts of this case and provides immunity to Defendants for all claims arising from the publication of user-generated content. Defendants are immune from Plaintiff's claims related to their restriction of her access to Forge of Empires in an effort to prevent her from publishing "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" content. 47 USC § 230(c)(2)(a).

### 2. Negligence/Gross Negligence/Willful or Wonton Conduct

In order to recover for negligence, a plaintiff must show that (1) defendants owed her a duty, (2) defendants breached that duty, (3) an injury resulted, and (4) the breach was the

proximate cause of the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (citing *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). "Gross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care." *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018).

The Amended Complaint points to the following to support these claims: "sexually explicit advertisements" promoting Forge of Empires creating "an unsafe environment for women players;" negligent supervision of "moderator-players," negligence *per se* for failing to protect her confidential information, "unsafe advertisements," and other complaints related to conduct from other users of Defendants' game.

The Court finds that Section 230 of the Communications Decency Act renders Defendants immune from the majority of these claims. The Court further agrees with Defendants' arguments that Plaintiffs' claims rely on implausible speculation:

> Defendants are not alleged to have done anything to cause other users to harass Plaintiff. Plaintiff alleges that it was she who took a photograph of her breasts, and it was she who sent that image to another player in an ill-advised attempt to prove that she was not a disliked male player. The rest is fanciful: that someone other than Gensmoky circulated the photograph to others whose real identities—and even their in-game usernames--she did not know. Plaintiff's fanciful speculation that a moderator was involved is insufficient under Iqbal and should therefore be disregarded.

Dkt. #64 at 16–17. Plaintiff has not cited any duty of Defendants to protect Plaintiff from alleged harassment by third parties in a video game. Even accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, the Court cannot draw the reasonable inference that Defendants are liable for any of these claims.

Plaintiff has failed to state a plausible claim for negligence, gross negligence, or willful or wonton conduct. Accordingly, dismissal is warranted under Rule 12(b)(6).

### 3. Defamation/Libel/Slander and Loss of Reputation

A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). A false written statement is considered libel, a false spoken statement is slander.

Plaintiff pleads that Defendants defamed her by stating plaintiff was "crazy," "a liar," and by disparaging "plaintiff's mental status." Dkt. #52 at 27.

The Court has previously determined that "Plaintiff presents the Court nothing demonstrating an actionable claim for 'loss of reputation' outside of defamation." Dkt. #34 at 8.

Defendants argue a defamation claim "must be based on a statement that is provably false," Dkt. #64 at 18–19 (citing, e.g., *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 590, 943 P.2d 350 (1997); *Herron v. KING Broadcasting Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989), and that the statements from Defendants at issue are "matters of opinion," *id*. at 19.

The Court agrees with Defendants' analysis. Even accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, these claims fail because Defendants' statements could not plausibly be considered statements of false truths.

Defendants further argue:

> A written publication is libelous per se (actionable without proof of special damages) if it tends to expose a living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence or social intercourse." *Amsbury v. Cowles Pub. Co.*, 76 Wash. 2d 733, 737, 458 P.2d 882, 884 (1969). Here, third-party players taunted Plaintiff, calling her "sluuut" "a stupid dumb biotch" and a "bad mother". Dkt. #52 at 27. The communications complained of could not plausibly be considered to be statements of false truths (that is, libelous declarations) as opposed to invective, opinions and unpleasantries in the category of those

> Plaintiff admits she sent to rattle opposing players. That does not rise to the level of libel, let alone libel per se.

Dkt. #64 at 19. The Court again agrees with Defendants' analysis. Even accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, this claim fails because these communications could not plausibly be considered statements of false truths.

Finally, the Court notes that Section 230 of the Communications Decency Act renders Defendants immune from claims based on statements from third-party users.

### 4. Emotional Distress Claims

A party may recover for negligent infliction of emotional distress "in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013) (citation omitted). Plaintiff fails to state a claim for negligent infliction of emotional distress because the Court has found an absence of negligent conduct. *See Bylsma*, 176 Wn.2d at 560.

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Lyons v. U.S. Bank NA*, 336 P.3d 1142, 1151 (Wash. 2014). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. This tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).

The Court has previously ruled that alleged inconsistent enforcement of community standards in an online video game does not raise to the level of extreme and outrageous conduct. See Dkt. #34 at 7. Nothing in the Amended Complaint alters this analysis. Plaintiff has failed to plead conduct that could satisfy the above requirements of this claim, and it will be dismissed.

### 5. Gender Discrimination in Public Accommodation

As an initial matter, this claim lacks any citation to any specific federal or state law even after amendment. Defendants assume that Plaintiff's claim is brought under the Washington Law Against Discrimination, RCW 49.60.215, and proceeds with some attempt at analysis of Plaintiff's claim. The Court agrees with that analysis—Plaintiff has failed to plead facts showing how Defendants could identify her or other users by their gender. Plaintiff has failed to plead facts plausibly indicating that Defendants treated her differently based on her gender. The Amended Complaint and attachments paint a richly-detailed portrait of Defendants' response to Plaintiff's complaints of gender discrimination, and the Court finds such a claim to be implausible given Defendants' repeated attempts to respectfully respond to Plaintiff's harassing and abusive customer service requests. This claim is dismissed under Rule 12(b)(6).

### 6. Fraud, Misrepresentation/Deceit

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A fraud claim is adequately pled only if it "informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 165, 744 P.2d 1032, 1069 (1987), *amended*, 109 Wn.2d 107, 750 P.2d 254 (1988). "General statements about material misrepresentations and fraudulent actions do not provide the required who, what, when, where,

ORDER GRANTING MOTION TO DISMISS - 11

and how of a properly pleaded fraud claim." *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wn. App. 220, 232 (Wash. 2016) (internal citations omitted).

The Court agrees with Defendants that Plaintiff has failed to plead her fraud claims with particularity. She does not identify any specific false statements of fact, the speaker of such, or how she was harmed. The allegation that InnoGames changed its terms and conditions in order to target Plaintiff directly is not plausible. Moreover, even if defendants had changed the terms and conditions to target Plaintiff, this still would not constitute fraud. Accordingly, Plaintiff's fraud, misrepresentation, and deceit claims are dismissed.

### 7. Unfair and Deceptive Trade Practices/Consumer Protection Act Claim

A claim for deceptive trade practices falls within the state's Consumer Protection Act ("CPA"). A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 533 (1986).

A practice is "unfair" under the CPA if it causes injury to consumers "which is not reasonably avoidable by consumers themselves." *Alpert v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 41741, 2019 WL 1200541, *19 (W.D. Wash. 2019) (citing *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179, 1187 (Wash. 2013)). An injury is "reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Id.* at *21 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)).

To support this claim, the Amended Complaint states that "these actions" (*i.e.*, everything previously stated in the Amended Complaint) violate the CPA "because they are

deceptive acts as outlined above…" Dkt. #52 at 38. This type of catch-all pleading leaves the opposing party and the Court in the dark as to what is being alleged and how the many facts of this case injured Plaintiff to support this claim.

Defendants' Motion argues Plaintiff has failed to plead a public interest impact, and that "[a] breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, is not an act or practice affecting the public interest." Dkt. #64 at 23 (citing *Lightfoot v. MacDonald*, 86 Wn.2d 331, 334 (1976)). Defendants also challenge the damages element.

In Response to Defendants' Motion, in a section referring explicitly to the Consumer Protection Act, Plaintiff discusses her fraud claim and later states that she was promised the game would be "fair." Dkt. #76 at 20. She does not address the elements of a CPA claim or respond to Defendants' points. Later, in a section devoted to product liability, she states "[b]roadly advertising a game as fair and then allowing unfair practices and cheating to thrive, and attempting to cause a medical condition in the people you solicit affects every player of *Forge of Empires* in Washington State and relates a broader public interest of protecting the public from predatory companies. Dkt. #76 at 21–23.

The Court cannot guess as to the facts supporting a CPA claim and must rely on Plaintiff's Amended Complaint and her briefing. Taking the pleaded facts as true, they do not demonstrate an unfair practice because any injury to the Plaintiff caused by cheating or unfair play in this game was reasonably avoidable, the harm did not affect the public interest, and it did not cause injury to her business or property. Accordingly, this claim will be dismissed.

**8. Product Liability**

Defendants argue:

ORDER GRANTING MOTION TO DISMISS - 13

> Forge of Empires and other online games are not subject to Washington's products liability law. RCW Section 7.72.010 defines "Product" as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." Forge of Empires is software as a service, not an "object," hence Plaintiff's product liability claim must fail as a matter of law. *See, e.g., James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 811 (W.D.Ky. 2000) (holding videogames not "products" under product liability law), *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 174 (D. Conn. 2002) (same); *Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002); Restatement (Third) Torts: Products Liability § 19 (1998) (product is "tangible personal property distributed commercially for use or consumption.").

Dkt. 64 at 23. The Court agrees that Forge of Empires as pled in this case is not a product under the WPLA. This claim is therefore dismissed under Rule 12(b)(6).

### 9. Contract and Promissory Estoppel Claims

Plaintiff pleads that Defendants breached the Terms and Conditions of the software, which prohibit harassing behavior and duplicating or making public the image of another person without their written approval. Dkt. #52 at 44–45. The Terms and Conditions state that content violating these rules will be removed immediately. She alleges that Defendants became aware that the photo of her in "a somewhat see-thru bra" was being shared but failed to take adequate action. Plaintiff alleges she "suffered damages from the loss of her photograph including loss of her intellectual property and the value of the photograph and the consequential damages that involved years of harassment." *Id*. at 47. She also alleges she was a third-party beneficiary to the Terms and Conditions contract entered into by other users. She pleads promissory estoppel by relying on these Terms and Conditions.

To prevail on a breach of contract claim under Washington law, a plaintiff must establish (1) the existence of a contractual duty, (2) defendant's breach of that duty, and that (3) defendant's breach of that duty caused damages to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't*

*of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).  The doctrine of promissory estoppel serves to enforce "otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261, 616 P.2d 644, 647 (1980).  Where a plaintiff alleges both breach of contract and promissory estoppel claims, "[i]t may be proper to dismiss a promissory estoppel claim when 'an undisputedly valid and enforceable written contract governs the same subject matter.'" *Neravetla v. Va. Mason Med. Ctr.*, No. C13-1501-JCC, 2014 U.S. Dist. LEXIS 200668, 2014 WL 12787979, *7 (W.D. Wash. Feb. 18, 2014) (quoting *Air Atlanta Aero Engineering Ltd. V. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009)) (emphasis added).

The Court finds that Plaintiff has failed to plead a material breach of the Terms and Conditions by Defendants that proximately caused damages to Plaintiff.  The breaches she points to are breaches of the terms by other users.  Plaintiff has failed to plead that Defendants had a contractual duty to prevent the sharing of this photo once she posted it, other than to attempt to remove the content as it is posted.  Even if such a duty existed, she fails to show that Defendants' inaction caused damage to her, other than the damage caused by the harassment of other users.  The Terms and Conditions did not state "in exchange for your money we promise you a harassment-free environment" or similar language.  The harassment by third parties is outside the scope of a contract claim, Plaintiff has failed to adequately plead that she was the intended beneficiary of a third-party beneficiary contract, and in any event Plaintiff has failed to plead how the alleged breaches by Defendants plausibly caused her damages.  Promissory estoppel is inapplicable as there is a contract governing the alleged breaches.  Finally, the CDA provides Defendants immunity from liability for the actions of third parties users.  *See* 47 U.S.C. §230(c)(1). These claims are dismissed.

**10. Copyright Infringement and Privacy Violation Claims**

Plaintiff's pleads that "InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph," that she created the image on July 25, 2016, that an InnoGames moderator "intercepted the private conversation" where she posted the photograph "then copied and transmitted this link to other parties." Dkt. #52 at 49–50. Plaintiff registered the image with the United States Copyright Office on September 03, 2019. *Id*. at 50.

Defendants argue:

> In *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Supreme Court held that a claim for copyright infringement may not be filed until after registration. The Copyright Act of 1976 only permits an award of statutory damages or attorney's fees if a copyright registration is issued within three months following publication of the copyrighted work. *See* 17 U.S.C. §412 (2). Plaintiff fails to demonstrate ownership of a valid copyright registration within the time constraints outlined in the statute. *See also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Plaintiff photographed her breasts on July 25, 2016. Immediately thereafter, Plaintiff published the image. Plaintiff did not register the photo with the U.S. Copyright Office until September 3, 2019--more than three years after publication, making her ineligible to receive statutory damages and permitting no claims for damages accruing prior to that date. No such post-registration infringing actions or damages are alleged.

Dkt. #64 at 25–26. The Court agrees that statutory damages and fees are not available. Any other damages attributable to Defendants under this claim are speculative and not plausible. This claim is properly dismissed under Rule 12(b)(6).

**11. Employment Discrimination**

Plaintiff pleads that Defendants failed to hire her for a Social Media Moderator position on May 12, 2017, because of her gender. Dkt. #52 at 52. She pleads that she "is unsure if the position was paid or volunteer, but believes it was a so-called 'volunteer' position that was actually paid with in-game currency." *Id.* Defendants state:

ORDER GRANTING MOTION TO DISMISS - 16

> InnoGames has no United States employees and has never recruited or intended to hire any United States employees. Social Media Moderators, the position for which she applied, are not employees of InnoGames. Even assuming this could be considered an "employment" situation, Plaintiff's claim must fail. The individuals reviewing moderator applications for Forge of Empires were unaware of Plaintiff's gender at the time she applied for the position.

Dkt. #54 at 138-9, 210. The Court finds that Plaintiff cannot bring a claim for gender discrimination in employment. Accepting all facts alleged in the complaint as true, and making all inferences in the light most favorable to Plaintiff, this claim is not facially plausible because Defendants were not offering employment with the position of Social Media Moderator.

### C. Leave to Amend

A "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2). Courts apply this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are commonly used to assess the propriety of granting leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Foman v. Davis*, 371 U.S. 178, 182 (1962). In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

The Court finds that Plaintiff has been aware of the majority of the above grounds for dismissal, has already amended her Complaint once, and that the deficiencies above cannot

possibly be cured by amendment. This assessment is further supported by the unusually detailed factual record provided by the Plaintiff in attachments to her pleading.

### IV.  CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6), Dkt. #64, is GRANTED. Plaintiff's claims are DISMISSED. All remaining motions in this case are STRICKEN as MOOT. This case is CLOSED.

DATED this 28th day of March, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE