UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Penny Quinteros _____ <br><br> _____ , <br><br> Plaintiff(s), <br> v. <br><br> InnoGames, Hendrik Klindworth, <br><br> Michael Zillmer, Julie (Jill) Blan, <br><br> Richard Stephenson_____ <br><br> , <br><br> Defendant(s). | CASE NO. C19-1402 RSM <br><br> SECOND AMENDED COMPLAINT FOR A CIVIL CASE <br><br> (28 U.S.C. § 1332; Diversity of Citizenship AND 28 U.S.C § 1331; Federal Question) <br><br> Jury Trial: No <br><br> _____ |

## Table of Contents

A.
B. I.   PRELIMINARY STATEMENT ......................................................................................... 2
C. II.  PROCEDURAL FACTS ................................................................................................. 4
D. III. BASIS FOR JURISDICTION ........................................................................................ 5
     Diversity of Citizenship ............................................................................................... 5
A.   The Amount In Controversy ........................................................................................ 5
     Federal Question .......................................................................................................... 6
     Personal Jurisdiction .................................................................................................... 7
IV.  VENUE............................................................................................................................ 11
V.   THE PARTIES TO THIS COMPLAINT ....................................................................... 11
     Plaintiff ......................................................................................................................... 11

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-1

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Defendants ................................................................................................ 11

VI.  BACKGROUND FACTS ......................................................................... 14

VII. LEGAL CLAIMS ...................................................................................... 24

Negligence, Gross Negligence ................................................................ 24

Invasion of Privacy by Publication ......................................................... 30

Defamation/Libel/Slander ....................................................................... 31

Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress 34

Gender Discrimination in Public Accommodation .................................. 38

Fraud, Misrepresentation/Deceit, Unfair and Deceptive Trade Practices ........................ 40

Product Liability – InnoGames created an unsafe and dangerous product by producing the game *Forge of Empires.* ......................................................................... 47

Breach of Contract, Third-Party Breach of Contract, Promissory Estoppel ................... 53

Copyright Infringement ........................................................................... 60

Intercepting Electronic Communications: State and Federal Claims .............................. 62

Intimate Image Dissemination ................................................................. 64

VIII. PRAYER FOR RELIEF ........................................................................... 65

Plaintiff, Penny Quinteros, proceeding *pro se*, for her Complaint against Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, and Richard Stephenson, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## I.    PRELIMINARY STATEMENT

1. This case is about intentional intimate image theft and publication of that image by an employee of the gaming company, InnoGames, for the purpose of targeting plaintiff, a female customer of the game, for sexual harassment. It is also about an internet gaming company that unscrupulously exploits its players for profit including advertising that the female employees are sexual playthings and encouraging males to commit crimes against the female players. Further, InnoGames, through its game Forge of Empires, uses a "freemium" game-model in which the game earns revenue by encouraging as many

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-2

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

players as possible to play, and the company relies on the known, and purposeful addictive nature of the game to generate revenue from the small percentage of players who become addicted. Forge of Empires' target audience is the male demographic, and to encourage male players to join, the company solicits players with pornographic ads offering women players for "aggressive sex." InnoGames created a system of rules that are ambiguous and enforced arbitrarily and capriciously by player-moderators and Community Managers. Both the player-moderators and Community Managers are employees of InnoGames. These rules allow Forge of Empires players and InnoGames staff members to conspire civilly and collusively intermingle their behavior to target players in order to disrupt their player's valuable accounts and remove female players from the game. The plaintiff was sexually harassed and targeted for removal by players with the active help and affirmative actions of InnoGames' staff members because of her gender and in order to appease the valuable male-demographic. InnoGames defrauds players through false promises in their Terms and Conditions and Player Rules that the company will not accept certain forms of actions from the players, that the game and the rules are fair.  Plaintiff relied on these promises in order to spend more than $9,000 on the video game. InnoGames creates an unsafe product through addicting psychological techniques, fails to warn women about the dangerous environment created by their reckless pornographic solicitations, and allows their own employees to improperly access, steal, and publish intimate images to facilitate sexual harassment of women in the game.

2. Plaintiff's complaint can be generalized in three categories of legal action: torts claims, contract claims, and statutory violation claims.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT-*3

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

3. Plaintiff seeks $1,205,000.00 in specified damages and unspecified damages as follows: $180,000 for loss of income due to an unsafe product; $500,000 for defamation claims and loss of reputation; $500,000 for emotional and physical suffering; and $9,000 for fraud plus $16,000 under Washington State Consumer Protection laws (triple damages provision); unspecified statutory or actual damages for copyright infringement; statutory damages as allowed; statutory and actual damages for intercepting electronic communications and intimate image disclosure; unspecified punitive damages; and unspecified interest and costs as allowable.

## II.    PROCEDURAL FACTS

4. Plaintiff filed initial complaint on Sept. 03, 2020 and complaint was dismissed as to Defendant Julie Blan on July 01, 2020. Plaintiff was given leave to refile within 30 days of dismissal. Plaintiffs InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson filed a motion to dismiss on July 27, 2020 which this amended complaint should make moot.

5. Plaintiff's amended complaint was dismissed on March 28, 2022, for failure to state a claim. Plaintiff appealed and the ruling was reversed on January 08, 2024. This second amended complaint follows.

6. Because Plaintiff's First Amended Complaint was almost entirely rewritten, Plaintiff is identifying EXACT ORIGINAL language via underlining. Language added in the Second Amended Complaint is identified in red.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-4

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## III.    BASIS FOR JURISDICTION

**Diversity of Citizenship**

7.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) (1-2), in that this is a case in which a citizen of one State sues a citizen of another State and citizens of a Foreign State and the amount at stake is more than $75,000 exclusive of interest and costs. It is therefore proper to be heard in federal court. Jurisdiction is proper in this case because the plaintiff is a citizen of the State of Washington, United States. The defendant Julie (Jill) Blan is a citizen of the State of Georgia, United States. The defendants Hendrik Klindworth and Michael Zillmer are citizens of Germany. The defendant Richard Stephenson is a citizen of the United Kingdom residing in Germany. The defendant InnoGames is incorporated under the laws of the foreign nation of Germany and has its principal place of business in Hamburg, Germany.

**The Amount In Controversy**

8.   The complaint exceeds the amount in controversy because the amount at stake is more than $75,000 not counting interest and court costs. The complaint seeks a prayer for relief as follows: Loss of Income $180,000; Loss of Reputation $500,000 ; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws. The complaint also seeks statutory maximum damages for copyright infringement and statutory damages for privacy violations and intimate image distribution as well statutory and actual damages for interception of an electronic communication and intimate image distribution, punitive damages, court costs, and interest.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-5

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**Federal Question**

C.

9. Under 28 U.S.C. § 1338, a case that involves a copyright is proper to be heard in federal court. This case involves a question under Title 17 of the United States Code involving infringement of copyright because the defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, and Richard Stephenson engaged in direct, contributory, and vicarious copyright infringement. They knew transmission of my copyrighted photograph was occurring on the website game Forge of Empires and they had the ability to prevent its transmission. Julie Blan, on behalf of InnoGames and it's executive officers Michael Zillmer and Hendrik Klindworth,  materially contributed to the infringing conduct by either directly or allowing a moderator under their (Blan, Zillmer, and Klindworth's) supervision to give a link of the photograph to players for the initial transmission or alternatively they profited from the transmission of the photo by increased micro-transaction sales and declined to exercise a right to stop or limit it.

10. Under 28 U.S.C. § 1331, a case that involves a federal question is proper to be heard in federal court. This case involves violation of 18 U.S.C. § 2511 otherwise known as the Electronic Communications Privacy Act. A federal law that provides a civil right of action for violation. This case also involves a question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Specifically Plaintiff alleges that a moderator of InnoGames intercepted and disseminated a photograph sent in an electronic communication. Plaintiff also alleges that defendant Julie Blan, on behalf of InnoGames, Hendrik Klindworth and Michael Zillmer and including other unnamed InnoGames employees discriminated against Plaintiff on the basis of sex when InnoGames failed to hire her for a Social Media Moderator position after she applied for the position on May

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-6

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

12, 2017 and was rejected immediately on May 13, 2017 without consideration because of her dispute over her photograph being distributed. This occurred despite Plaintiff being fully qualified for the position.

**Personal Jurisdiction**

11. Personal jurisdiction is appropriate in this case because InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, Richard Stephenson intentionally reached out to and solicited from the plaintiff and others in Washington State to conduct business through the internet games including *Forge of Empires*. This business involved entering into contracts with the plaintiff, receiving payments from the defendant for services and repeatedly and knowingly transmitting communications and computer data over internet computer networks to the plaintiff while she was in Washington State. Washington State's long-arm provision allows the assertion of jurisdiction over persons who transact business within the state or commit a tort within the state. Wash. Rev. Code § 4.28.185(1)(a-b) (2011). Due process requires, "in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specifically this complaint alleges the following intentional minimal contacts from the defendants with the plaintiff necessary to sustain specific personal jurisdiction:

a. Based on knowledge and belief, Plaintiff was solicited while in Washington to play *Forge of Empires* by InnoGames and through Hendrik Klindworth and Michael Zillmer. Plaintiff did not seek out *Forge of Empires'* website independently, but instead received an advertisement

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT-*7

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

directly emailed to her while she was a resident of Washington soliciting her to come assist the game-developers with the beta-phase (pre-public-access) stage of the game. This is how Plaintiff came to play *Forge of Empires*. Hendrik Klindworth and Michael Zillmer on behalf of InnoGames knew, or should have known, that their company and employees under their direction and supervision were soliciting players for their beta-phase game play and these solicitations were sent to people including some to Washington State.

b.  Plaintiff has received hundreds of solicitation emails, hundreds of targeted advertisements specifically via Facebook, MSN, and other services as have other Washington State residents encouraging her and others in Washington to play *Forge of Empires*. Other Washington State residents plaintiff is acquainted with have received such solicitations as well. Plaintiff has watched Forge of Empires advertisements targeted to the Washington market on her local television stations. These represent affirmative actions where InnoGames, with the sanction of Hendrik Klindworth and Michael Zillmer knowingly reached out to the State of Washington and the Plaintiff.

c.  InnoGames solicited payments from the Plaintiff using AmazonPay services. As is a well-known fact, Amazon is a Washington State company headquartered in Seattle, Washington. This was an intentional act from InnoGames to reach out to Washington State and some of the transactions InnoGames had with plaintiff occurred via this payment method.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-8

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

InnoGames continues to maintain this form of bank account in Washington state. Hendrik Klindworth and Michael Zillmer as CEO and COO likely own portions of the value of this account as well through stock.

d. Plaintiff notified defendants InnoGames, Julie Blan, Hendrik Klindworth and Michael Zillmer that she was a citizen of Washington State via email correspondence in the spring of 2017 between Plaintiff, Julie Blan and Bartlomiej Wawro (an InnoGames employee). Plaintiff notified these employees that she had filed a complaint with the German Federal Anti-Discrimination Agency (Antidiskriminierungsstelle). As part of that complaint and via the email conversation, Plaintiff was required to identify her residence and citizenship status. This complaint was responded to by legal-staff of InnoGames (presumably under the supervision of the CEO and COO) yet the defendants listed continued to solicit Plaintiff for business, encourage her to purchase their services, contact her for harassment.

e. Plaintiff sent an electronic copy of her Washington State Driver's License to the "Co-Community Manager" referred to as "Sgt. Bothari" via an InnoGames support ticket on June 21, 2017 when he questioned whether her "true name" was indeed "Penny." Julie Blan's responsibility was to supervise and job-share responsibilities this employee as his "Co-Community Manager" at that time. This license was referenced at least four times in conversation with Julie Blan. Despite this notice, she

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-9

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

continued to facilitate business transactions, continued in her harassment, and performed the other affirmative actions as listed in the below complaint.

f.  Plaintiff sent in a statement via Forge of Empires Support Tickets that she was a citizen of Washington State and she believed the actions taken by InnoGames staff and moderators were illegal based upon the laws of her state. Both Julie Blan and Richard Stephenson stated that they had read these "legal claims," by denying they were responsible for the matter. Yet these two defendants continued to reach-out to plaintiff to facilitate business transactions, harass plaintiff, and perform the other actions as listed below in the complaint.

g.  Based upon information and belief, Plaintiff alleges that InnoGames uses "cookies" "ISP-locator-services" and other technological tools to identify where players are playing from and to solicit a target market's players (such as players in Washington State) for future business. Plaintiff believes all defendants have the ability to access this information and that specifically Julie Blan has reviewed it as early as June 2016.

12. If the court finds that general jurisdiction does not exist, personal jurisdiction is also appropriate under Federal Rule of Civil Procedure 4(k)(2) to the defendants InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson because they are foreign-based defendants not subject to general jurisdiction in any state's courts, the case is about copyright infringement, as well as a violation of federal privacy law 18 U.S.C. § 2511

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-10

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

otherwise known as the Electronic Communications Privacy Act, both raise federal question, and exercising jurisdiction is consistent with U.S. law.

## IV.    VENUE

13. Under 28 U.S.C. § 1391, venue is appropriate in this case because a substantial part of the events giving rise to the action occurred in Washington State. Plaintiff played the game almost exclusively from Washington State and the communications with the defendants occurred while plaintiff was in Washington State. Furthermore, as described above, all of the defendants are subject to personal jurisdiction in Washington.

## V.    THE PARTIES TO THIS COMPLAINT

### Plaintiff

14. Penny Quinteros, also known as "TwoCents," is an individual who resides at 19338 133rd PL SE, Renton, Washington. Her telephone numbers are 206-661-8292 or 253-854-2788. Plaintiff is a citizen of Washington. Plaintiff is a 42-year-old married woman with two children. Plaintiff is a licensed attorney in Washington State, and is currently proceeding *pro se*.

### Defendants[1]

15. Upon information and belief, Defendant InnoGames. GmbH is a limited liability public company of Germany. Its principal place of business is Friesenstraße 13, 20097 Hamburg, Germany. Its telephone number is +49-40-788-9335-0. InnoGames is a $500 million a year revenue company specializing in "freemium" games available to access via internet

---

[1] All Defendants are represented by Diana Siri Breax of SUMMIT LAW GROUP, PLLC 315 Fifth Ave S. Suite 1000, Seattle, WA 98104 AND Alan Behr (admitted Pro Hac Vice) and Elizabeth Adinolfi (admitted Pro Hac Vice) of PHILLIPS NIZER LLP 485 Lexington Avenue, New York NY 10017.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-11

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

browser or mobile app. One of the games produced by InnoGames is *Forge of Empires*. InnoGames solicits customers world-wide and focuses on the lucrative United States market. ("Freemium" refers to games that provide basic content for free, but entice players to purchase and spend in-game currency in order to have access to premium game features and content, advance faster, and generally allow easier game-play.)

16. Upon information and belief, Defendant Hendrik Klindworth is an individual who resides in Hamburg, Germany and is a citizen of Germany. His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the Chief Executive Officer of InnoGames and a co-founder of the company. In his position as an executive officer he oversees all actions of InnoGames including its staff, advertising, design, products, distribution and customer relations.

17. Upon information and belief, Defendant Michael Zillmer is an individual who resides in Hamburg, Germany and is a citizen of Germany. His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the Chief Operating Officer of InnoGames and a co-founder of the company. In his position as an executive officer he oversees all actions of InnoGames including its staff, advertising, design, products, distribution and customer relations.

18. Upon information and belief, Defendant Julie (Jill) Blan is an individual who resides in and is a citizen of Georgia, United States. Her address is 22 Bollen Rd, Rockmart, GA 30153. At the time of the events she was the United States Community Manager for InnoGames' game *Forge of Empires*. She managed all interaction with players from the U.S., acting as the highest-level of interaction with the company that the over 1 million U.S. Players could achieve effectively acting as a "stone-wall" between players in the

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-12

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

United States and InnoGames staff members in Germany. She was responsible for ensuring that InnoGames' moderators and she met the legal requirements for privacy-disclosures and access to confidential records. Her primary interaction with players was through "Support Tickets" and her supervising and monitoring the game forum. She has communicated via electronic message on Jan 17, 2017 "I am the Community Manager. I am responsible for all issues related to the game, players, and moderators." On Jan. 24, 2019 she stated, "I am the Community Manager of the U.S. server and an InnoGames employee. As such, all aspects of the game, rules, players and moderators are my responsibility." On Nov. 28, 2016 she wrote, "You can write to Innogames… however you will be directed back to me as I am the Community Manager for the U.S. server and responsible for the game on this server." The Community Management of the U.S. server is responsible for being the final arbiter of any rules disputes as well as fairly enforcing the rules to create a fun and fair environment. She was responsible for enforcing and managing the Terms & Conditions. In addition as the U.S. Community Manager, Julie Blan directed and supervised all moderators' activities for the US server. She interacted with other moderators and other Community Managers (nationally and internationally based) via a proprietary chat-system for InnoGames staff members, as well as Skype and email, coordinating activities and discussing players and their punishments. She was generally responsible for the game on the U.S. server including monitoring for cheating, reporting game-bugs, modifying the system to censor profane language, and transmitting design ideas to the game-designers to facilitate changes in the game.  Julie Blan also plays the game Forge of Empires with at least one secret account.  She uses this account to mock and harass players of the game.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-13

19. Upon information and belief, defendant <u>Richard Stephenson</u>, is a citizen of the United Kingdom currently residing in Germany. His business address is His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the <u>International Community Manager</u> of <u>InnoGames</u> for *Forge of Empires*. He also served as assistance to Julie Blan in her role as Community Manager for the US server. As such he had responsibility similar to Julie Blan's to monitor the game, players and supervise the moderators. He interacted with other moderators and Community Managers via a proprietary chat-system for InnoGames staff members, as well as Skype and email, coordinating activities and discussing players and their punishment. He was responsible for ensuring InnoGames moderators and he met the legal requirements for privacy-disclosure and access to confidential records.

## VI.   BACKGROUND FACTS

20. Plaintiff repeats and realleges paragraphs 1 through 19 hereof, as if fully set forth herein.

21. Upon information and belief, Plaintiff states that she began playing the browser-based game *Forge of Empires* in its pre-public-access beta-phase stage of development sometime in 2011 or 2012.  <u>In 2011 or 2012 the plaintiff registered for a *Forge of Empires* account with the player name "TwoCents."</u>

22. *Forge of Empires* is designed, produced and managed by InnoGames. It is a game available to access via internet browser or mobile app. It is designed so that you build a "city" starting in the Stone Age and progressing through quasi-historical eras. As a part of the game-play players need to communicate and rely on social interactions in order to proceed. One major form of social interaction is encouraging players to group into

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-14

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

"guilds." Another form of communication is "global chat" and a separate "message system." Further players assist each other with "support actions" such as "aiding" friend's cities or trading in-game goods in a marketplace. Players also compete via various methods including guild-versus-guild fighting and compete for personal or guild ranking. *Forge of Empires* is free to play but puts specific obstacles in place to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases. The in-game currency is termed "diamonds," and is purchased through the game using various methods such as AmazonPay, Paypal, or a direct credit-card purchase. *Forge of Empires* is designed to promote excessive game-play by penalizing infrequent play. This occurs in instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

23. InnoGames "moderators" are employees.  There is a hierarchy system in place creating "moderators," "senior moderators" and "community manager" titles. Each level of hierarchy has more supervisory authority over the level below it. All of these roles are advertised with job announcements to the community of players. The job-applicant then submits a written application and resume.  There is a competitive hiring and interview

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-15

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

process.  After hiring, the moderators, senior moderators, and community managers sign hiring and confidentiality documents before they are permitted access to InnoGames' systems and moderation tools.  After access is given, the moderators are trained on these proprietary tools and computer systems.  The moderators, senior moderators, and community managers respond to various customer service complaints submitted by customers by way of "Support Tickets," or emails.  The moderators, senior moderators, and community managers handle issues such as password recovery, technical support, billing disputes, reports of cheating, game glitches and bugs, general game-play instruction, and breach of rule complaints.  The specific types of support tickets handled by each individual moderator, senior moderator, or community manager are assigned by InnoGames and the moderators, senior moderators, and community managers must answer the tickets assigned to them.  The moderators and senior moderators generally work part-time and are required to put in a minimum number of hours each week answering support tickets.  They use only InnoGames developed computer software tools to do this work, and they must log-in before beginning work. The community managers work either full-time or part-time.  The moderators and senior moderators are compensated with in-game currency. The community managers are paid with the currency of their country.  There are no "customer service" agents at InnoGames, instead the customer service role of a major company is given the title "moderator" "senior moderator" or "community manager." There is no distinction between these roles and a remote customer service role at another type of company except for the form of payment.

24. Plaintiff is unaware of any terms and conditions agreed to by "clickwrap" agreement at this time, when she began playing *Forge of Empires*, but believes there were none, or they

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-16

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

were different than they are now. However Plaintiff did read the Terms and Conditions, the Privacy Policy, The Game Rules, and the InnoGames Website statements of fairness upon her first "in-game warning" occurring approximately July 13, 2016. Plaintiff perused the Terms and Conditions and Privacy Policy, but read the game rules well as well as the Website.

25. Plaintiff played the game for some time, then left and returned in or around 2016 with the same player name.

26. At that time the plaintiff does not believe she agreed to any new terms and conditions but she remembers a pop-up blocking her re-entry into the game. Plaintiff is unsure if she clicked "accept" on the pop-up Terms and Conditions, but she remembers opening the Terms and Conditions and believes she likely closed the game-window and when she reentered the pop-up was gone.

27. Other players have agreed to the Terms and Conditions and still other players are able to access the game without clicking "accept" on the Terms and Conditions. For a time, players who started the game via mobile-app were only asked by InnoGames to agree to the Privacy Policy and the Terms and Conditions were not visible to these players.

28. Plaintiff incorporates by reference the InnoGames Terms and Conditions, Privacy Policy, and *Forge of Empires* Rules to be filed by separately as an exhibit. Plaintiff further incorporates several screenshots images and support-ticket interactions to be filed separately as an exhibit. Plaintiff incorporates by reference images of examples of the pornographic advertisements to be attached separately by exhibit. Plaintiff further incorporates an affidavit made by a prominent *Forge of Empires* player of the veracity of several events listed in the complaint to be filed separately as an exhibit.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-17

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

29. Plaintiff played *Forge of Empires* almost every day without interruption from 2016-2019 for over 10,000 hours of game play.

30. During the course of this time and unbeknownst to the plaintiff, *Forge of Empires* was contracting with third-party advertisers who solicited mostly male players into the game with pornographic advertisements that illegally mislead the public using language such as: "brutal sex" or "aggressive sex" would occur in the game, and "Most of the characters in this game are sexually attractive females who display sexually explicit behavior." These statements were accompanied by nude or nearly nude females. At the same time, InnoGames through its written *Forge of Empires* rules and by proxy Hendrik Klindworth and Michael Zillmer who were responsible to supervise the rules-development and Terms and Conditions made statements that "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including but not limited to drawings and animations), profanity, politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs and alcohol, or promoting the use of said substances or in any way inappropriate. Posting links to such content is also not allowed." From the Forge of Empires Game Rules, and "following the rules creates a fun and fair environment for everyone." Julie Blan, Richard Stephenson used and enforced these rules often referring to them with hyperlinks and other unnamed moderators under their supervision made statements making assertions to the plaintiff that the game was "family friendly."

31. Upon information and belief, there is evidence that at least some of the community, who sexually harassed Plaintiff, was formed by players responding to these advertisements.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-18

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

32. Plaintiff was unaware of these advertisements and if she had known she either would've chosen not to play the game, or to play with much more caution. Plaintiff further relied on the explicit statements that "InnoGames does not accept … illegal, insulting, offensive… [or] sexually explicit" materials to play the game and make purchases. Defendants knew these statements were false and that InnoGames repeatedly accepted, and even produced, such materials.

33. Upon information and belief, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson were aware of these advertisements or at least had notice of them through player reports on the game forums as early as 2015 and continuing through 2019. It was specifically the jobs of Julie Blan and Richard Stephenson to monitor these forums and report concerning information to InnoGames. Hendrik Klindworth and Michael Zillmer had knowledge of these advertisements because the Terms and Conditions for all of InnoGames' products was changed at some point during Plaintiff's game-play to include a phrase expressly distancing InnoGames from, "the content of all websites that contain direct or indirect references (so-called "links") to our products…" (Terms and Conditions Art 15.8). It is logical to assume that some of the pornographic advertisements were the content that InnoGames sought to distance itself from and that the CEO and COO should be aware of changes to the entire company's Terms and Conditions.

34. Upon information and belief, in or around July 2016, the plaintiff began to be harassed by other players and she was harassed directly by players who were secretly InnoGames moderators, senior moderators, and community managers regarding her gender. Other players, and moderators themselves supervised by Julie Blan and Richard Stephenson

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-19

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

made statements such as "you're not actually a woman, you're just faking it [paraphrasing]." These players and staff members accused the defendant of actually being a man and started to solicit the plaintiff's friends and co-players to no longer engage with her socially or for game activities. They used the specialized, interactive game features, such as "guild-versus-guild" and "friends-list" as tools to harass Plaintiff. These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

35. Plaintiff states upon information and belief, that an InnoGames moderator accessed this screenshot link through a private InnoGame feature known as the "report" system when this Third-Party reported the "whisper" that it was sent in. This unknown moderator then released this private and copyrighted photograph to other players in the game. It was specifically Julie Blan's job to supervise these moderators to ensure acts like this data-breach did not take place. Instead of supervising and properly dealing with the incident, she instead hid the information from Plaintiff, lied to the Plaintiff about it, and covered up the fact by making up derogatory statements about Plaintiff to repeat to the other player-moderators and Community Mangers via a proprietary InnoGames system known as "InnoChat," Skype and email. Julie Blan also attempted to cover up the malfeasance of her staff by using the "ban" feature in the game to target Plaintiff.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-20

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

36. Plaintiff did not send the photograph to anyone other than the neutral third-party player, Gensmoky, who had no motive or reason to transmit the photo and who also apologized to the Plaintiff for believing incorrect information. Plaintiff has communicated with Gensmoky who insists he did not transmit the photograph to anyone. Plaintiff believes this is a credible statement. Plaintiff does not have GenSmoky's contact information, except for his Discord account, however, believes upon discovery it could be obtained from InnoGames servers.

37. Upon information and belief, InnoGame moderators have a history of accessing private report information for their own personal benefit and reasons and transmitting this information to other players. This has occurred on at least two other occasions. One was where a game-moderator leaked confidential information about the name of the account Plaintiff's minor son was playing on to unfriendly players. This allowed them to identify that he was a minor child, remove him from the guild he was playing in, and taunt him in global chat. Another instance was one in which a moderator, who had a grudge against Plaintiff and her friend Aprusfire, accessed Aprusfire's data report indicating that he was appealing his permanent ban and released it to unrelated players. This demonstrates a pattern of behavior in which moderators accessed confidential information to target Plaintiff and her friends. There is further evidence that this system of moderator-player bias has occurred on other InnoGames such as *Tribal Wars* against a player by the name of Chase Xander, living in New Mexico.

38. Moderators further have in-game agendas. Since they are both players and InnoGame staff members, they form the same alliances, enemies, grudges etc. that other players have. At least 3 known current or former moderators have had a grudge against Plaintiff for her in-

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-21

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

game activities in guild-versus-guild and global chat. Some moderators have targeted the Plaintiff because she doesn't display 'typical female' behavior.' Another moderator who went by the player-name of burrito77 engaged in a conversation in the "global chat" wherein he was mocking plaintiff while the discussion-participants were threatening to kill Plaintiff by shooting her long-distance. Burrito77 also made offensive remarks about Plaintiff while he was playing in the same guild as Plaintiff shortly after the intimate image theft. Burrito77 was in a rival guild at the time my photograph was stolen by a moderator, and was in the same guild with the person who attempted to extort my photograph and was the first known person to say he had seen it.

39. Moderators generally cannot moderate any world they have an account on, however, moderators can secretly create more than one account (alternate or "alt") accounts like any other player. Additionally they can be friends across world with players on a world they are moderating on. They are allowed to respond to rule violations reported by players on a "gut instinct" level to see if something feels offensive, allowing for a lot of bias, arbitrariness, and capriciousness on rule enforcement.

40. A barrage of other players then proceeded to obtain the photo as evidenced by their descriptions of it, and statements that they had seen it. They openly laugh at and harass the plaintiff using statements such as, "what you are is a dumb sluuuuut,""butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps sending them photos." This offensive language was directed at the plaintiff repeatedly and consistently from 2016-2019. The plaintiff reported the photograph and its transmission to InnoGames in or around August of 2016 and again in November of 2016. Plaintiff also specifically informed Julie Blan that it had been a moderator who had leaked the photograph to the

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-22

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

players. Despite the fact that it [the photograph] was still being transmitted amongst players, Platiff was told by InnoGames , specifically by Julie Blan and moderators under her supervision, that nothing could be done about it even though it is a direct violation of InnoGames Terms and Conditions.

41. Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff. She encouraged other players to "report" Plaintiff even if transgressions were minor or non-existent. She allowed InnoGames to be used as a tool of harassment by allowing a mob of players to repeatedly use its report function that it set up and designed to harass Plaintiff in order to deny her access to the game. At the same time Julie Blan stated on several occasions that she would take action to stop the harassment of Plaintiff. The game moderators and community manager were lax in their punishment of other players and instead focused on punishing the plaintiff when she showed outrage or offense over the situation.

42. A game moderator accused the plaintiff of having a "vulgar upbringing." Other game moderators accused the plaintiff of "drama" or allowing her emotions to run high. These are subtle, yet offensive slights based upon Plaintiff's gender.

43. Game moderators, Julie Blan, Richard Stephenson, and other InnoGames staff are aware of plaintiff's gender because of her reports regarding the theft of the photograph of her breasts and reports of harassment over her gender.

44. Game moderators, Julie Blan, Richard Stephenson, and other InnoGames staff and players are generally aware of other players genders because of the pronouns used when addressing these players and their avatar picture selections. Although they may occasionally not represent the "true" gender of players, they are generally analogous.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-23

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Seeking to appease the players in the game who present as male will be statistically very similar to catering to players who present as male in real life.

## VII.    LEGAL CLAIMS

**<u>Negligence, Gross Negligence</u>**

45.   Plaintiff repeats and realleges paragraphs 1 through 44 hereof, as if fully set forth herein.

46. The negligence, gross negligence, or intentional willful or wanton conduct of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can be characterized as having <u>reckless disregard when they knew or should have known of sexually explicit advertisements promoting their game *Forge of Empires*. These sexually explicit advertisements created an unsafe environment for women players. This environment led to ongoing and continuing sexual harassment due to plaintiff's gender for 3 years continuing until today.</u>

47. The negligence of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can further by characterized as creating an dangerous system wherein moderator-players were given access to private player information despite potential biases and were not properly supervised in their access to prevent them from sexually harassing Plaintiff and intentionally accessing and transmitting Plaintiff's private photograph. InnoGames, through Hendrik Klindworth and Michael Zillmer created policies to prevent inappropriate access to systems that Julie Blan was responsible for implementing.

48. Despite these policies, they continued to hire and train moderators who also acted as players of the game creating an unsafe system where the moderators have strong motive

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-24

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

to inappropriately access the accounts of their game rivals. InnoGames, Hendrik Klindworth, Michael Zillmer, and Julie Blan knew of the risk that moderators, senior moderators, and community managers posed to players.  In particular, Chase Xander had accused InnoGames in a lawsuit of moderators sexually harassing her, discriminating against her on the basis of gender, and threatening her and her family. The lawsuit was filed May 6, 2016, two months before Plaintiff was injured, and Ms. Xander had been making reports to InnoGames at least since March of 2014, two years before Plaintiff was injured. The policies put in place to prevent inappropriate access were demonstrably inadequate and this fact was known to InnoGames, Hendrick Klindworth, Michael Zillmer, and Julie Blan during the period of time they had a duty to supervise their employees to prevent them from targeting Plaintiff and inappropriately accessing her account.

49. The negligence of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can further be characterized as *negligence per se* because InnoGames and each of its executive officers and employees has a legal duty under several Washington State, United States,  and international laws to protect Plaintiff's confidential information. (RCW 9.73.030, Electronic Communications Privacy Act (1986), Computer Fraud & Abuse Act (1986), German Data Protection Act, "BDSG", European Union Data Protective Directive, etc.)   Instead of protecting Plaintiff's private conversation and photograph-link reported to them, they allowed an InnoGames employee under their supervision  to access the information and release it to third-party players. This disclosure is a violation of Washington State Law, specifically RCW 9A.86.010. As such, it was an illegal act committed by an InnoGames employee.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-25

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

InnoGames, has a duty not to allow their agents to commit illegal acts using their proprietary access to Plaintiff's accounts.  Hendrik Klindworth, Michael Zilmer, Julie Blan, and Richard Stephenson have a duty to properly supervise agents under them. After the information was released Julie Blan and Richard Stepehenson attempted to cover-up the incident further exacerbating Plaintiff's injury.

50. InnoGames is vicariously liable under the theory of respondeat superior for the actions of their employees.  In this case, a moderator, senior moderator, or community manager who illegally accessed and distributed Plaintiff's intimate image for the purpose of insulting, embarrassing, and harming Plaintiff and damaging her interest in her intellectual property remaining confidential. The employee who released the image was acting in the scope of their duty by reviewing support tickets about Plaintiff creating the condition for the image-theft to occur.

51. Even if InnoGames's moderators and senior moderators are not employees and instead are only volunteers. They are still acting in the scope of their volunteer work and at the direction of InnoGames.  InnoGames is vicariously responsible for their actions through the theory of the "gratuitous agent" under Washington State Law.  See *Baxter v. Morningside, Inc.*, 10 Wash.App. 893, 896–97, 521 P.2d 946 (Wash. Ct. App. Div. 2, 1974) ("[status as a volunteer] does not necessarily preclude a finding that a [m]aster-servant relationship existed… We believe the rule to be that where one volunteers or agrees to assist another, to do something for the other's benefit, or to submit himself to the control of the other, even without an agreement or expectation of reward, if the one for whom the service is rendered consents to its being performed under his direction and control, then the service may be rendered within the scope of a master-servant

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-26

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

relationship.") Here the moderator who illegally released the intimate image was acting within the scope of their duty by accessing private information through InnoGames servers in order to respond to support tickets. This was their agreed duty with InnoGames and InnoGames controlled the exercise of this duty through training and supervision and by virtue of the contract the moderator signed with InnoGames.

52. InnoGames had an affirmative duty, based upon the business-customer relationship it created with Plaintiff, not to intentionally, recklessly, or negligently harm plaintiff with an unsafe environment created by their misleading advertisements. Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson had an affirmative duty based upon their failure to supervise and properly stop the unsafe advertisements when they became aware of them and also when they failed to warn Plaintiff that men had been solicited into the game who would be seeking out women such as the Plaintiff for sexual activities.

53. Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson failed to act as a reasonably, prudent people would under the circumstances or even exert any level of care. In fact each of the named defendants affirmatively acted to cover up and obscure the dangerous environment created by InnoGames' solicitations. Hendrik Klindworth and Michael Zillmer made attempts to legally distance themselves from the advertisements, but allowed their company to continue to pay to run these illegal, misleading, and dangerous advertisements. Julie Blan and Richard Stephenson had a duty to review the forum reports to be aware of the advertisements made as early as 2015, yet they later made affirmative statements to the Plaintiff that the game was fun, fair, and was "family friendly" and suitable for all ages.  In addition to their own statements, Defendants Richard Stephenson and Julie Blan supervised a moderator, by

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT-*27

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

review of Plaintiff's prior tickets, who advised Plaintiff on Dec. 12, 2017 that she should "keep in mind we advertise this as a game anyone can play and as a result many children play this game…we try to keep the chat to a PG rating to protect players and we ask that you abide by those rules." These are affirmative statements and actions that a reasonably prudent person would not have taken knowing that the game was in-fact advertising its women players as sexual-pawns.

54. Defendants Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that they would enforce the rules equally against all players in order to prevent the harassment of the plaintiff and remediate the harm caused by the illegal release of Plaintiff's image by an InnoGames employee under their supervision, these promises of rescue created an affirmative duty to act.  For example, Plaintiff was told on sixty-three occasions "Thank you for bringing this matter to our attention, we appreciate all players that help the Forge team to keep our game running without rule breakers. I will investigate and take the appropriate action(s) if I find rule breaking." These statements were made directly by Julie Blan and by the moderators she supervised. These statements promise that InnoGames and Julie Blan will investigate rule breaking and take appropriate actions. These are affirmative statements indicating that InnoGames and Julie Blan will take responsibility for stopping the harassing statements. These statements included the phrase: "No matter which, please do not engage this person in the future. Ignore all messages, ignore in chat. Be sure to report."  If these statements had not been made, Plaintiff would have taken different steps to remediate the harm she was suffering.

55. Based upon information and belief, but for InnoGames solicitations of men advising them that women players were available for "aggressive sex," etc., and but for InnoGames

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-28

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

failure to properly set up a customer relations system in which players of the game didn't also have access to confidential information as employees, the injuries to plaintiff such as the sexual harassment and illegal theft and release of her photograph would not have occurred. This includes that the damages to the plaintiff would not have happened but for Hendrik Klindworth's, Michael Zillmer's, Julie Blan's, and Richard Stephenson's actions to properly fulfill their given roles to prevent InnoGames from engaging in such advertisements and activities.

56. Plaintiff is a foreseeable plaintiff because Plaintiff is a woman who was approached and later harassed in a sexual manner, exactly as the advertisements promise would occur. It is also foreseeable that a player who is secretly a moderator might have a personal vendetta against a player such as Plaintiff and use their private information accessed through the report system created by InnoGames to carry out malfeasance against a player like the Plaintiff. Plaintiff is also a foreseeable plaintiff in that the theft and disclosure of her private photograph was an intentional and illegal act designed to harm Plaintiff.

57. Plaintiff's physical damages are the loss of her interests in her property i.e. the loss of exclusive control of her intellectual property rights in her photograph since copyrighted. This loss of interest in property is accompanied by foreseeable emotional damages that might occur from the loss of such personal property. The foreseeability of these emotional damages is reinforce by the fact that InnoGames specifically inserted into their Terms and Conditions a clause stating that players were prevented from transmitting photographs of others without written permission indicating that InnoGames was aware

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

this activity might cause emotional harm. (Terms and Conditions Art. 12.3 Bullet point 11).

58. Plaintiff further alleges physical injury in the form of headaches (induced from sinus injuries from daily crying over the course of 4 years), weight gain and related illnesses associated with it, high blood pressure, and other physical manifestations of stress.

59. Plaintiff's emotional injuries include despondency, depression, anxiety, suicidal thoughts and other thoughts of hopelessness and grief caused by the harassment endured over the theft of her private photograph, loss of her reputation as caused by the incident, and general sexual harassment induced by the defendant InnoGames, Julie Blan, Richard Stephenson and vicariously Hendrik Klindworth and Michael Zillmer through their failure to properly supervise, knowledge and acquiescence to allow the reckless advertisements and moderator-system to continue.

60. InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson are vicariously liable for the harassment plaintiff suffered at the hands of third-party players in addition to the harassment plaintiff suffered at the hands of secret players who are also moderators and employees of InnoGames. Although the harassment of these players may be an intervening action of negligence, it is not a superseding action in that it was a foreseeable result that players may harass a woman when they are solicited to do so and when they are given a copy of a photograph of the woman's breasts by a moderator who improperly accessed that confidential information.

**Invasion of Privacy by Publication**

61. Plaintiff repeats and realleges paragraphs 1 through 6 hereof, as if fully set forth herein.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-30

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

62. The facts alleged indicate that Defendant InnoGames has engaged in the tort of Invasion of Privacy through Public Disclosure of Private Facts. Washington recognizes a common law right to privacy as stated in the Restatement (Second) of Torts § 652D (1977). *White v. Township of Winthrop*, 128 Wash.App. 588, 593, 116 P.3d 1034 (Wash. Ct. App. Div. 3, 2005). The elements of which are that a person who gives publicity to a matter concerning the private life of another is subject to liability for the tort of invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not of legitimate concern to the public. *Reid v. Pierce County*, 136, Wash.2d 195, 961 P.2d 333 (Wash. 1998).

63. InnoGames, through its agent a moderator, senior moderator, or community manager, obtained and published an intimate image of Plaintiff's breasts without consent of Plaintiff. Intimate images of a woman's breasts are of a kind that are highly offensive to a reasonable person as illustrated by the fact that it is a crime to distribute such images under RCW 9A.86.010. Further there was no legitimate concern to the public in seeing an image of Plaintiff's breasts. Lastly, the image was sent several members of the InnoGames player community with the intention that the image would be further published.

64. The publication was done with the intention that it should be seen throughout the country and that it should reach Washington State and harm a Washington State resident.

C.

65. The damages are the same as those identified under the negligence section of this complaint.

**Defamation/Libel/Slander**

66. Plaintiff repeats and realleges paragraphs 1 through 65 hereof, as if fully set forth herein.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-31

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

67. InnoGames's agent, a moderator, senior moderator, or community manager, committed a sexual-based crime against defendant when they disclosed her intimate image without consent for the express purpose of creating sexually explicit and harassing comments against Plaintiff. Because the crime was committed with the express purpose of creating the harassment, InnoGames has legal liability for the resulting statements. Some of this harassment resulted in defamatory statements.

68. Specifically the defamatory statements include:

    **a.** "2C[TwoCents] is a tranny? … 2C [TwoCents] is a push account"

    **b.** That InnoGames won't ban Plaintiff because Plaintiff perform sexual favors for them.

    **c.** That "Inno won't ban 2C [TwoCents] because she keeps sending them photos."

    **d.** Repeatedly accusing Plaintiff of being other players because they dislike those players.

    **e.** That Plaintiff "failed in lawschool."

    **f.** Repeatedly stating that Plaintiff was a man and not a woman.

    **g.** Stating that Plaintiff was autistic.

    **h.** That Plaintiff "flashed" random strangers at her door.

    **i.** That Plaintiff was in a "sad loveless marriage" where her husband "had all the control."

    **j.** That Plaintiff "sent everyone naked selfies and then got mad everyone saw them."

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-32

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

k. That Plaintiff was living in a "repressive relationship" that Plaintiff has a "very bad husband" and that Plaintiff's life "turns to crap" when her husband comes home.

l. That Plaintiff's husband was unfaithful to her and that he liked online porn more than plaintiff.

69. Upon knowledge and belief, defendants Julie Blan and Richard Stephenson directly committed libel and damaged plaintiff's reputation when they made defamatory remarks that the plaintiff was "crazy," "a liar," and disparaged plaintiff's mental status in their InnoChat conversations, Skype conversations and emails amongst other Community Managers and player-moderators. Julie Blan and Richard Stephenson were aware that the player-moderators would carry this information back into their game-play and it would be "leaked" to the gaming community where Plaintiff played with her husband, children, brother in law and other friends and family.

70. Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson are responsible for the libelous statements of third-party players and unknown moderators when they continually and repeatedly questioned plaintiff's gender, solicited a photograph of plaintiff's breasts in order to make her prove her gender; they transmitted a photo of her breasts amongst themselves without permission; the players and moderators sexually harassed the plaintiff regarding the photograph; and taunted her in relation to the photo, her gender and her failure to hide the incident in shame because these defendants each performed affirmative actions that led to and encouraged the statements to be made. They allowed the photograph to be negligently accessed by a moderator which in-turn led to the comments regarding plaintiff as a "sluuuut" "stupid

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-33

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

dumb biotch" "a bad mother" randomly solicited strangers for sex etc. These comments are libel *per se* because they are derogatory about Plaintiff's sexual habits and do not need to be proven false. Additionally these statements had no privilege because they were not required under any circumstances and they were not protected speech, either under the First Amendment or Communication's Decency Act. They were not protected by the Communication Decency Act Section 230 because none of the defendants has protection under the Act since they each induced, or were vicariously liable for inducing, encouraged and affirmatively acted to create and assist in generation of the harassing statements and actions. Therefore the publications cannot be treated as "user-generated content." Additionally since some of the harassing statements were made directly by player-moderators these statements are not "user-generated content," but content created by staff of InnoGames.

71. Plaintiff seeks further discovery to determine exactly which players were also moderators in order to finalize which statements were made by third parties and which statements were made by moderators. Plaintiff has just on July 9th, 2020 received confirmation from a credible source that at least two of the player-moderators were responsible for several of the harassing, derogatory and libelous statements about the Plaintiff.

D. **Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress**

72. Plaintiff repeats and realleges paragraphs 1 through 71 hereof, as if fully set forth herein.

73. Upon information and belief, Julie Blan and Richard Stephenson committed intentional infliction of emotional distress when they negligently allowed her private photograph to be released to players in the game and then attempted to cover up the incident by seeking

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-34

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

to get Plaintiff to acquiesce and accept the harassment. When I made statements to report the moderator's improper behavior they individually made statements alleging that no moderator had done anything improper. They each affirmatively attempted to ignore Plaintiff by repeatedly closing her tickets without response when she reported these incidents. They attempted to make plaintiff acquiesce to the harassment by repeatedly banning her, denying her the service and use of her game account, when she object to the harassing statements.

74. Defendants InnoGames and because of their knowledge and acquiescence of the unsafe environment and events occurring, Defendants Julie Blan, Richard Stephenson, Hendrik Klindworth and Michael Zillmer, recruited male players and potentially moderators into the game with sexual advertisements promising the Plaintiff and women like her as sexual pawns for aggressive sex, then when these same recruited players acted upon the promises made in the advertisements, Defendants Julie Blan and Richard Stephenson intentionally assisted the male players in using the game-features such as the "ban" feature to harass Plaintiff.

75. Defendants Julie Blan and Richard Stephenson specifically attempted to inflict emotional distress upon Plaintiff by knowing of the game advertisements and discrimination occurring against Plaintiff and affirmatively helping the harassers in their goal of getting Plaintiff banned. It is outrageous conduct for a company to advertise their unknowing female players up as sexual pawns for their male-based demographic to sexually assault and then refuse to take action when a sex-crime occurs as a result of their pornographic advertisements.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-35

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

76. Julie Blan and Richard Stephenson individually promised they would review the harassing statements and punish the offending parties if they had broken the rules, which they had by engaging in sexist and offensive language. The Defendants Julie Blan and Richard Stephenson then failed to keep their promises.

77. Defendants InnoGames is vicariously liable for this the infliction of emotional distress and reckless conduct leading to emotional distress committed by its employees in the course of its business.  Hendrik Klindworth and Michael Zillmer are vicariously responsible for this intentional conduct because they affirmatively set up a system in which all customer complaints were "stone-walled" with the Community Managers and could not be brought further. This is reinforced when Julie Blan stated to me that as a Community Manager, even if I sent information to InnoGames in another fashion or called them, I would be redirected to her since she was the Community Manager and thus the ultimate arbitrator of complaints for players in the United States. Further the actions of "third-party" players cannot be said to be independent of the actions of InnoGames, Julie Blan, Richard Stephenson, Hendrik Klindworth and Michael Zillmer because the tools of the game themselves were part of the harassment, the harassment was encouraged and exacerbated by Julie Blan and Richard Stephenson and there was a collusive intertwining of actions that can no longer be said to be independent of each other, amounting to a civil-conspiracy. InnoGames created the system and had a profit-motive to protect the large number of players harassing the Plaintiff with their game-service even if the Plaintiff herself suffered because of it.

78. The instances here individually are, and also cumulatively add up to outrageous conduct. Using their positions of power over the Plaintiff and her valuable game-account, the

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-36

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Defendants Julie Blan and Richard Stepehenson attempted to use this leverage over the Plaintiff to get her to acquiesce and accept the harassment she was suffering at the hands of players and secret moderators so as to make their jobs easier.

79. Plaintiff suffered depression, anxiety, thoughts of suicide and other diagnosed emotional disorders that amount to severe and extreme distress. Plaintiff has suffered uncontrollable weeping episodes almost every day since July of 2016. Plaintiff has been diagnosed with these conditions as a result of the harassment and events occurring alongside and intermingling with the harassment by Forensic Psychologist David Dixon. Plaintiff will provide a report upon the discovery phase of the trial.

80. Plaintiff asserts these reactions are reasonable under the circumstances because they are not a result of simply having unpleasant social interactions on a video game, but instead result from theft and release of plaintiff's private photograph, the ongoing and sustained harassment engaged in by the defendants as stated above, the fact that Plaintiff's husband, children, nephews, and two brother in-laws witnessed the harassment directly as well as thousands of game-playing strangers, the attempts to socially isolate the Plaintiff from her entire friend-group, and the general pressure exerted by a large and powerful company upon Plaintiff to capitulate to her harassers or lose her valuable game-account. Studies have indicated that women who are sexually harassed in online video games experience more severe emotional distress than when experiencing other forms of offensive remarks.[2]

---

[2] https://www.researchgate.net/profile/Jesse_Fox3/publication/297485534_Women%27s_experiences_with_general_and_sexual_harassment_in_online_video_games_Rumination_organizational_responsiveness_withdrawal_and_copi

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-37

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**Gender Discrimination in Public Accommodation**

E.

81. Plaintiff repeats and realleges paragraphs 1 through 80 hereof, as if fully set forth herein

82. Plaintiff's gaming experience was substantially different and harder than that provided to male players because of her gender. Defendants InnoGames, Hendrik Klindworth and Michael Zillmer advertised their female players for sexually-based crimes to encourage a male demographic to join the game. They also created a moderation system that allowed moderators to access and disseminate intimate images of female players for the purpose of sexually harassing them.

83. InnoGames, Hendrik Klindworth, and Michael Zillmer built a game that was capable of being used as a tool to target female players. Defendants Julie Blan and Richard Stephenson were aware of this use of the game-design to create a different and harder experience for female players but did nothing to make the game equally accessible to people of all genders and in-fact they affirmatively helped "ban" female players based on the discriminatory design of the rule-structure and how it was enforced in actual game play as well as the discriminatory "report" system. In-fact, InnoGames changed the report around 2019 to only allow a limited number of reports to be filed at any given time, showing they are now exerting some control over this "mass reporting" attempt to harass players including the Plaintiff.

84. In this case, the *Forge of Empire* interactive game was used to harass players when they were allowed to use their own accounts to repeatedly and persistently attack any "guild" that Plaintiff was in simply because the harassers did not approve of gender. This made

ng_strategies/links/56e96bf208ae77f87278fd8d/Womens-experiences-with-general-and-sexual-harassment-in-online-video-games-Rumination-organizational-responsiveness-withdrawal-and-coping-strategies.pdf

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-38

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Plaintiff a pariah in the game and made an essential element of game-play (joining a guild) unavailable to her. Additionally Plaintiff's in-game "friends" who were relied on to materially play the game were targeted for attacks to induce them to remove Plaintiff and no longer provide the needed game assistance. (See Attached Affidavit(s)).

85. InnoGames also made it a policy to ban Plaintiff from playing the game on any world at any time because she filed a lawsuit alleging sexual discrimination against them after then told Plaintiff she had the "right to play under any other account [other than TwoCents]" on June 27, 2019.

86. InnoGames set up and created the "report system" in a manner that allowed gender-discrimination to occur. Even if InnoGames cannot control who is reported using the feature as it is currently designed, the design itself allows "mobs" of players to gang up on unpopular gaming targets such as female players and report every activity regardless of they break the rules or not. InnoGames could have designed a better system in which to enforce game rules such as having non-player customer service agents generally monitor the game interactions. The amount of reports received by the moderation-team is a significant factor in how they determine who to punish and ban from the game. In this instance Plaintiff was banned during periods of time for quoting T.S. Elliot poetry that was not offensive, she was banned for typing the asterisks (*) key, she was banned for using the exact same quote other players had previously used without bans, and she was banned for using global chat to say "do not buy goods from this player." Furthermore Plaintiff was banned from the game for incidents supposedly occurring during periods of time that she was not even playing. Plaintiff also admits offensive language at times and does not contest the statements were against the rules, but affirms that male players were

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-39

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

treated more leniently for same or similar offensive language.  These incidents show how the structure of allowing the players to control the "report" feature led to fundamental denial of service to the Plaintiff. In short, because the players are allowed to participate in the community with unchecked sexism, and they know the gender of the people they are reporting, due to avatar pictures and gender pronouns, the pool of players reported to the moderators is unfairly skewed against the female demographic, meaning female players receive game-punishments per rata more often than their male counterparts.

**Fraud, Misrepresentation/Deceit, Unfair and Deceptive Trade Practices**

F.

87. Plaintiff repeats and realleges paragraphs 1 through 86 hereof, as if fully set forth herein.

88. InnoGames made the following specific statements in their Game Rules and Terms of Service respectively:

    a. "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate."

    b. "…using or publishing content tantamount to mobbing, or threatening, harassing, insulting or defamatory content, or publishing or linking to corresponding material on a third party website, irrespective of whether this content affects other users, our employees or other persons or companies;

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-40

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

using, placing or publishing discriminatory content (e.g. hate speeches against groups of persons, in particular based on race, ethnic origin, religion, disability, gender, age, veteran status or sexual orientation), or content that is political, immoral, pornographic, morally reprehensible, offensive, violent, glorifies violence, sexist, right-wing or left-wing or that violates laws, in particular child protection laws and the Interstate Treaty on the Protection of Minors; or linking to corresponding material on a third party website or advertising, offering for sale or otherwise promote offending products contravening the law, in particular child protection laws;

violating applicable laws or prompting legal violations or linking to corresponding articles;

publishing, duplicating, making publicly accessible or distributing protected content, and in particular violating industrial property rights (e.g. copyright law, trademark law, patent law, design patent law or utility patent law); advertising, offering or distributing goods or services;"

89. The above statements were published on InnoGames websites with update dates of 2015 and 2018 respectively, although the Terms and Conditions statement was the same before 2018 as well. Plaintiff was directed in the Support Ticket conversations to read these rules on multiple occasions.

90. These statements indicate that InnoGames will not accept the exact type of behavior that Plaintiff was the victim of:  intimate image distribution, gender harassment, and offensive and sexually explicit language being targeted at her.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-41

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

91. InnoGames knew that the above statements were false. They knew that their moderators did not attempt to enforce the above rules in a consistent fashion. InnoGames also knew that their moderators were responsible for harassing female players as shown by the Xander lawsuit.

92. Plaintiff relied on the above statements to continue playing Forge of Empires from 2016 onward and to make repeated transactions totaling over $9,000.

93. Further on May 21, 2017, by Maestro, a senior moderator, that "We enforce our rules on the basis that all players are equal, we don't care what their race is or what their gender is.  Each player is treated equally." Plaintiff relied on this statement to continue playing the game and spending money. This statement was false as shown below with their unequal enforcement of the rules to target Plaintiff. InnoGames knew this statement was false at the time their agent Maestro stated it because they had already been unequally enforcing their rules.

94. InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson misrepresented their game as fair. They engaged in practices such as only punishing players for rules violations if they were reported by other players that are inherently unfair. They changed their rules without notice. They created rules meant specifically to target the plaintiff. They did not equally apply their rules to all players. They targeted the plaintiff specifically for violations that they do not sanction other players for. InnoGames essentially waived the rules for some players without telling the other players.

95. In the course of creating their gaming company, InnoGames, Hendrik Klindworth, and Michael Zillmer have made statements that their game is fair and the rules are equally applied. They created as one of their "core values" that: "Fair Play: We show fair

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-42

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

behavior to our players, to our partners and the whole company." Additionally they have listed on their website rules section a statement saying, "Following the rules helps to create a fun and fair environment for everyone," and "These rules can be adapted to different cases in the interests of maintaining fair play within the game."

96. Julie Blan and Richard Stephenson sent messages to the Plaintiff with links to the above statements, copied the last two of the above statements verbatim, and often invoked the "fairness" of the game in their communications with her. It was Julie Blan and Richard Stephenson's job to enforce the rules, so they would be in a direct position to know exactly how the game was unfair while they were making their assertions.

97. Plaintiff read these statements at least as early as July 2016 and relied on the idea that the game was fair to make a majority of her individual purchases amounting to approximately $9,000. Plaintiff would not have spent money on the game if the rules indicated the game was unfair or were silent as to the issue of fairness. Plaintiff also relied on the statements to endure rules-punishments which denied her access to her game-property.

98. InnoGames is aware that their game is fundamentally unfair because of its design. If InnoGames relies on the players to "report" each other, then some players, unpopular ones, will be punished for rules violations when popular players are not punished for the exact same violations. This is general knowledge about the company that all of their executive officers and Community Managers know, including Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson. For example, upon information and belief, Plaintiff quoted the movie *Deliverance* saying "He got a real pretty mouth, ain't he?" Plaintiff was banned for her statement specifically because of her quoting this line.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-43

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Several months later a more popular player said the exact same quote in the exact same way and was not banned or otherwise punished at all.

99. InnoGames, Hendrik Klindworth and Michael Zillmer's motive was to deceive the Plaintiff and others with these false promises of fairness to make money through increased business. Julie Blan and Richard Stephenson's motive was to purposefully attempt to stop the Plaintiff from making legitimate complaints in order to hide the malfeasance of the player-moderators and to make their job easier by not having to respond to Plaintiff's tickets.

100.    The defendants, Julie Blan and Richard Stephenson in the course of attempting to stop Plaintiff's complaints of harassment and bias, targeted the plaintiff for minor rules violations that they do not target other players with. They caused the plaintiff to be unable to communicate in game-chat (a muffle or chat-ban) because she criticized other players for in-game behavior [,] something specifically allowed by the rules. They do not punish other players for the same offense. They banned the plaintiff from the game for using three or five asterisks. They banned the plaintiff for "reading" poetry in chat. At the same time they have not banned other players who have egregiously bought and sold in-game items for real life money, used profane and offensive language such as "who lit the fuse of your tampon?" and other behaviors and language.

101.    As a part of the fraud, Julie Blan acting on behalf of InnoGames, changed their rules specifically to target the plaintiff. Julie Blan had the ability to do this in two ways: she could message the game-designers and other staff to request changes to the rules AND she could alter the game in some limited ways herself as shown below.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-44

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

102.    Throughout 2016, 2017, and most of 2018 the word "ass" wasn't a censored word in the game and was not specifically against the game rules. Plaintiff was banned for using the word "ass" on or around Nov. 22, 2018. Plaintiff stated that it wasn't against the game rules to Julie Blan and instead of unbanning Plaintiff for not violating the rules Julie Blan stated, "If the words 'dick' and 'ass' are no longer censored, I appreciate you bringing this to my attention and I will see that the censor is put back into place." Within a few minutes the game was censoring the word "ass." This is a specific instance where the game rules were changed specifically to the detriment of and to target the Plaintiff.

103.    Another instance where the game rules were changed to target the plaintiff was:

In 2016 and as late as May 25, 2017,  the communication rule for the US server stated:

> *InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate.*

But on June 22, 2017 (or perhaps earlier) the communication rule stated:

> *InnoGames does not accept any publication that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including but not limited to drawings and animations), profanity, politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs*

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-45

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

*or alcohol, or promoting the use of said substances or in any way*

*inappropriate.*

At some point between  May 25, 2017 and June 22, 2017  the word "profanity" was included in the rules without any notice even though the InnoGames Terms and Conditions state that rule changes need to be announced to the community. Additionally the Rules page itself says the last update [was] 01.09.2015. Adding the word "profanity" to the rules only came after the plaintiff repeatedly and insistently asserted that profane language in of itself wasn't a rule violation beginning in November 2016 and notified Julie Blan specifically on May 25, 2017 that profanity wasn't against the game rules. Plaintiff was specifically quoted the first version of the rules several times by moderators and Julie Blan as verification of what the rules where at any specific time. Plaintiff states upon information and belief that the rules were secretly changed within a month of Plaintiff's assertion to Julie Blan that profanity wasn't in the rules. Upon information and belief, this occurred when Julie Blan chose to email or otherwise contact InnoGames Staff to request the word be added specifically into the rules to target Plaintiff.

104. These unfair behaviors, particularly targeting the plaintiff and allowing other players to cheat, create economic hardship and emotionally distress the plaintiff. She has to pay additional money for in-game items in order to "keep up" with other cheating players during the course of competition. If the plaintiff had known the game was unfair she would not have spent $9,000+ on the game. Additionally plaintiff has suffered damages by being denied access on several occasions to her game-property by being forced to endure

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-46

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

unfair "bans" from the game. These bans unfairly hindered Plaintiff's progress increasing her purchases.

105. These fraudulent acts, specifically enticing players into the game with promises of fairness while knowing the game was not fair and not enforcing the game fairly, has an impact on the public interests of Washington State. Specifically the State has an interest in protecting dozens, hundreds, or thousands of players who play InnoGames products from these unfair promises and attempt to defraud these players, including Plaintiff, out of their money. Furthermore Washington State has an interest in protecting its statutory laws against unfair or deceptive trade practices.

106. Plaintiff alleges these actions are against the Consumer Protection laws of Washington State because they are deceptive acts as outlined above and under this statute Plaintiff is entitled to triple damages not to exceed $25,000. *Rev. Code Wash.* §§ 19.86.020 - 19.86.090.

G.    **Product Liability – InnoGames created an unsafe and dangerous product by producing the game *Forge of Empires*.**

107.    Plaintiff repeats and realleges paragraphs 1 through 106 hereof, as if fully set forth herein.

108.    InnoGames designed a product meant to intentionally inflict a mental disorder on Plaintiff. This mental disorder, Internet Gaming Disorder, creates structural and functional abnormalities in the brain of people with the disorder.[3] Plaintiff suffered from this disorder as a result.

_____

[3] https://pubmed.ncbi.nlm.nih.gov/27447451/

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-47

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

109.    InnoGames, Hendrik Klindworth, and Michael Zillmer created an unsafe product by developing the internet game *Forge of Empires*. The game creates psychological addiction. Julie Blan and Richard Stephenson are aware that the game is dangerously addictive and facilitate this addiction in players by helping them play and not warning them of the dangers involved in playing, in effect helping to sell the dangerous product.

110.    At first Plaintiff experienced feelings of euphoria, satisfaction, and felt as if she was in a safe community of friends as do other players of *Forge of Empires*. Plaintiff became psychologically dependent and addicted to playing *Forge of Empires*. Even after the above described harassment, the Plaintiff was unable to voluntarily quit playing the game. During this period of time, InnoGames and its officers were aware of the phenomena of psychological dependence and addiction to their game. Defendants never gave the Plaintiff any notice or warning of the danger of psychological dependence or addiction from continued play. Instead the defendants, InnoGames, Hendrik Klindworth and Michael Zillmer, purposefully used the phenomena of addiction to help make players stay in the game longer and therefore spend more money on micro-transaction purchases to advance in the game faster. Plaintiff continues to this day to have a compulsive urge to play *Forge of Empires*.

111.    Although the American Psychiatry Association's manual didn't add gaming disorder yet to its medical reference manual it is referenced for further study and it identifies symptoms of problem video gaming.[4] Further the World Health Organization

---

[4] https://www.webmd.com/mental-health/addiction/video-game-addiction#1

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-48

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

included "Gaming Disorder" to the 2018 *International Classification of Diseases* its medical reference book.[5]

112.    But for *Forge of Empires* intentionally addictive design, Plaintiff would not have developed Gaming Disorder.

113.    It was reasonable that Plaintiff would suffer this Disorder because she was solicited by InnoGames to play a game intentionally designed to cause the disorder as described below.

114.    Plaintiff has been diagnosed by a Forensic Psychologist with all of the signs and symptoms of Gaming Disorder including: impaired control over her gaming on *Forge of Empires*; giving increased priority to *Forge of Empires* gaming over other activities to the extent that it takes precedence over her other interests and daily activities such as spending time with family, working or being able to care for herself; and continuation or escalation of her gaming the occurrence of negative consequences – such as being unable to quit *Forge of Empires* when being sexually harassed.

115.    Plaintiff further alleges that she has been diagnosed with all the warning signs of "Problem Gaming" such as: Thinking about gaming on *Forge of Empires* all or a lot of the time; feeling bad when she can't play the game; needing to spend more and more time on *Forge of Empires* to feel good; not being able to quit *Forge of Empires* or even play less, or even to spend less money on the game; not wanting to do other things she used to like such as reading; having serious problems at home, school, and being unable to work because of gaming; playing despite all of these negative consequences; lying to

---

[5] https://www.who.int/news-room/q-a-detail/gaming-disorder

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-49

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

people close to her about how much time she spends playing *Forge of Empires*; and using *Forge of Empires*  to ease bad moods and feelings.

116.     Upon information and belief, InnoGames, Hendrik Klindworth and Michael Zillmer purposefully built *Forge of Empires* to create Gaming Disorder in its customers. Further, they continue to adapt *Forge of Empires* to become ever more addictive based upon data they receive from researching their expanding audience. InnoGames, Hendrik Klindworth and Michael Zillmer use the "freemium" model of internet games. Using this model they offer their game for free to a wide public audience knowing that between 1%-12% [6]of beginning players will become habitually and dangerously addicted to playing *Forge of Empires* and thereby spend money on the game. Furthermore being young and male is a high-risk factor for Gaming Addiction, which while not encompassing the Plaintiff, does explain why *Forge of Empires* seeks to appeal to this market.[7]

117.     59% of Americans play video games, and 97% of Americans age 12-17 years old play video games creating a large danger to the public of intentionally addictive games such as *Forge of Empires*.[8]

118. *Forge of Empires* uses particular psychological strategies in an attempt to create Gaming Addiction such as creating a "grind" in the game where it is difficult and time-consuming to advance in the game. In *Forge of Empires,* the longer you spend away from the game the less you are rewarded on your city productions, buildings, settlements, quests, events.

---

[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

[7] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-50

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

This encourages players to log into the game at least daily, but often addicted players feel like they have to come in every 5 minutes or they will miss out on important items necessary to progress without spending money. Another technique *Forge of Empires* uses to addict players is to provide "Gachas"… "Gachas" are named after a Japanese toy dispensing machine where you put in money and hope to get a certain collectible prize back. In this system *Forge of Empires* uses "Gachas" by providing an opportunity to receive certain collectible items on a random-reward basis. There is no way to directly obtain the item you desire without taking a chance that you will get many undesirable items. This is also known as "Loot Boxes." Often in order to obtain the collectible items desired, and which you will need to be competitive with other players, the only way to do so is to spend in-game currency (diamonds). "Gachas" are based off of a psychological phenomenon called the "Skinner Box." *Forge of Empires* also uses techniques of "Hot State" and "Loss Aversion" which encourage players to not think about their purchases because they are in the middle of action and don't want to lose their progress. This is shown in *Forge of Empires* where players are battling other guilds and often have to "diamond heal" their troops back to full health-points in order to continue or lose the progress they've made the previous day. *Forge of Empires* offers "limited time" offers in order to encourage people to spend immediately before the offer "expires." *Forge of Empires* further relies on the "IKEA effect" whereby when someone puts work into something, they value it more highly. Therefore people who do not want to lose ranking, must continue to spend diamonds in order to maintain their high rankings. *Forge of Empires* uses other psychological techniques to create Gaming Addiction in its customers

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-51

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

that are not listed here as well. (The listed and unlisted techniques to addict gamers as identified in this paragraph can be in the video at https://youtu.be/xNjI03CGkb4).

119. Plaintiff used *Forge of Empires* the way it was intended. The game specifically is designed to make a player such as Plaintiff play more and more often until they become a habitually addicted player.

120.    Plaintiff has often set times to interrupt her sleep so that she can come in and "collect" items from her city. This is a frequent occurrence among players. Plaintiff has also played while driving from her mobile phone as is also customary amongst players of *Forge of Empires*. Plaintiff has had occasional jobs during the course of 2016-2020 but has been unable to keep these jobs due to her Gaming Addiction. Plaintiff also alleges economic harm from the intentional Gaming Addiction created by the unusual amount of money she spent on *Forge of Empires* – $9,000 – when a traditional "subscription" game would've likely cost only about 4% of that total over the same period of time. Plaintiff has physical injuries as well such as weight gain and related conditions e.g. sleep apnea, acid reflux, high blood pressure etc from her Gaming Addiction. Plaintiff has suffered extreme emotional side effects such as distancing from family except through interacting with them in the game as well as depression, anxiety, and thoughts of suicide.

121. The game *Forge of Empires* is unreasonable dangerous because it is designed to create Gaming Addiction. Defendants had a reasonable alternative product design they could've made. Defendants could've made a subscription-based model of gaming that doesn't reward players for more time spent with the game or simply changed the design structure of the game to not reward continuous play. InnoGames could also have

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-52

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

attached warning labels viewable to *Forge of Empires* players. Therefore Plaintiff alleges there is a design defect that created an unreasonably dangerous product.

122. InnoGames also sought to continue this intentional infliction of Gaming Disorder on Plaintiff by making unreasonable advertisements to Plaintiff. Plaintiff has seen thousands of ads for *Forge of Empires* even though she is already a player. Every time Plaintiff opens a computer browser, she sees an advertisement for Forge of Empires. This includes on Plaintiff's work computer where she has *never* played or been associate with *Forge of Empires* on. Plaintiff cannot escape the advertisements. Further, InnoGames designed "push" notifications to remind players to log into the game. And InnoGames sends emails to Plaintiff reminding her to come in and play the game.

**H.     Breach of Contract, Third-Party Breach of Contract, Promissory Estoppel**

123. Plaintiff repeats and realleges paragraphs 1 through 122 hereof, as if fully set forth herein.

124. InnoGames, in its *Forge of Empires* Game Rules states that "*InnoGames* does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate." (emphasis added). This is an explicit contract with Plaintiff wherein InnoGames creates a duty for itself not to accept the material stated. This contract was written by InnoGames and is a contract of adhesion, which should be strictly construed against InnoGames. This contract was breached when InnoGames accepted the publication of harassing statements and

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-53

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Plaintiff's intimate image. By InnoGames accepting such publications, Plaintiff was harmed with emotional and intellectual property damages as stated in the prayer for relief.

125. In the event Plaintiff made a valid contract with InnoGames when she entered *Forge of Empires* subject to the Terms and Conditions of play, Plaintiff alleges this contract was breached by the Defendant and that she performed her portion of the contract until the breach. As a result of the breach, plaintiff suffered damages.

126. Plaintiff's presumed contract with InnoGames is a standard "click-wrap" contract which is a contract of adhesion. As such, InnoGames sets the terms and they should be held strictly to those terms since there was no negotiation and they had the privilege of drafting in their chosen language. Some of those terms of Article 12.3 are:

   a. "duplicating or making publicly accessible an image of another person without the relevant person's written approval [is prohibited],"

   b. "using or publishing content tantamount to mobbing, or threatening, harassing, insulting or defamatory content…[is prohibited],"

   c. "using, placing or publishing discriminatory content (e.g. hate speeches against groups of persons, in particular based on race, ethnic origin, religion, disability, gender, age, veteran status or sexual orientation) …[is prohibited]."

   d. linking to said discriminatory content is prohibited

   e. "publishing, duplicating, making publicly accessible or distributing protected content, and in particular violating industrial property rights (e.g. copyright law…)…[is prohibited].

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-54

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

f.    "publishing personal data and confidential information without authorization [is prohibited]."

*Terms and Conditions* Art. 12.3

A coinciding term is: "If we [InnoGames] become aware of illegal content pursuant to Art. 12.3, such content will be removed immediately." *Terms and Conditions* Art. 13.3.

127. InnoGames became aware immediately at the time of the incident (because a moderator had sent the photograph) that there was the illegal content, of an intimate image being published of the Plaintiff but they did not act in any way to remove the photographic content immediately. In fact, they allowed players to brag about having received and seen the photograph despite these statements being reported to the moderation staff. Further they became aware when the Plaintiff notified them in August 2016 and November 2016 that the image was being still being transmitted across their servers. The image was being sent to every new guild member of the guild SpaceBalls and was linked in several messages formed for the purpose of harassing me. Julie Blan on behalf of InnoGames made false statements that she would properly punish and thereby attempt to stop the spread of the image on InnoGames' servers, but these were false promises.

128. InnoGames became aware of the harassing and discriminatory content based on Plaintiff's gender was being posted about Plaintiff in late June or early July 2016 from Plaintiff's use of the "report" feature in the game, but they did not act to remove such content immediately. In fact they did the opposite, encouraging the posting of such content.

129. Similarly at the same time as the photograph, InnoGames became aware that players had made publicly available the protected (copyrighted) photograph and that Plaintiff's

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-55

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

personal data and confidential information (such as her real-life name) was being published without her authorization.

130. Up until the time of InnoGames' breach, the Plaintiff had properly complied with the Terms and Conditions contract which was all that was required by the contract to perform.

131. Plaintiff informed InnoGames through their support-function and declared a material breach of the contract on January 01, 2019, with the statement,

> *"Well, I hate to point out that you are in breech* [sic] *of the contract you created. You DID just change your rules as you so pointedly noted. The rules in effect before the change clearly stated that you ARE NOT the final arbiter of rule disputes, so I'd like to speak with the person who is. You are required to uphold the contract or it becomes null and void (and thus any punishment I've received for breaking said contract would be an illegal denial of service)."*

132. Plaintiff again notified InnoGames and Julie Blan of the breach of contract on February 03, 2019.

133. Despite these notifications of breach, InnoGames through Julie Blan and Richard Stephenson attempted to enforce the contract against the Plaintiff without abiding by it themselves.

134. Plaintiff suffered damages from the loss of her photograph including loss of her intellectual property and the value of the photograph and the consequential damages that involved years of harassment. These were foreseeable because Article 12.3 involves listing actions that might cause emotional harm, specifically listed as "endangers," in the

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-56

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

contract's language in an attempt to prevent it including the photograph provision, harassing provision, and discriminatory content provisions.

135. Even if Plaintiff did not make a contract (or even if she did) with InnoGames, the players harassing her did, and Plaintiff is entitled to enforce their contracts as a third-party beneficiary to their contract.

136. Specifically, Maestro, a senior moderator, told Plaintiff on January 17, 2017 that the Game Rules were in place to provide a high quality game and fair disposition to *all* players (emphasis added).

137. Generally all players on *Forge of Empires* need to agree to the Terms and Conditions before playing, with a few rare exceptions. In the Terms and Conditions, players agree to abide by the Game Rules. This includes the players sexually harassing Plaintiff and spreading around her photograph. As stated above, the Game Rules are intended to benefit other players and provide other players with a quality and fair game.

138. Article 12.3 of the Terms and Conditions states in opening: "As User, you will refrain from any action that endangers or disrupts the operation and functionality of the Games and the successful collaboration with other users." Plaintiff falls into the category of "other users" the contract sought to protect and her "successful collaboration" with InnoGames was disrupted through the harassing player's acts. Therefore Plaintiff is a third-party beneficiary and entitled to the benefit of these contract terms.

139. InnoGames failed to enforce their prohibition of the terms of Article 12.3 such as the photograph, discrimination, harassment, protected content, or confidential information terms listed above at all.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-57

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

140. Plaintiff informed InnoGames through Julie Blan and Richard Stephenson about these breaches but the content was not removed, and the parties posting such content were not prohibited from further posting the same or similar information.

141. Even if no contract was made, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that the game rules were fair and would be enforced equally:

    a. "In short, the rules are in place to ensure fair disposition for all players, single household or otherwise." – Seriak (a moderator for Innogames) June 3, 2016.

    b. "Following the rules helps to create a fun and fair environment for everyone." – Julie Blan aka Panacea November 11, 2016

    c. "It was your responsibility to read and understand the rules of the game. You failed to follow the rules and you were subsequently banned for a infraction. This is our policy and it is in place to ensure fair disposition to all players." – Maestro, a senior moderator, January 1, 2017.

    d. "These rules can be adapted to different cases in the interests of maintaining fair play within the game." – Julie Blan aka Panacea, May 5, 2017.

    e. Julie Blan repeated the same statements as above on numerous occasions as identified in Exhibit 10, the Support Tickets.

    f. "Following the rules helps to create a fun and fair environment for everyone." Julie Blan aka Panacea, May 21, 2017.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-58

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

142. Plaintiff relied on these statements that the game rules would be fair and equally enforced when she shared her private photograph with Gensmoky. Plaintiff has a screenshot of the incident in which she specifically refers to the fact that if Gensmoky [or anyone generally] shared the photograph, Plaintiff would seek to enforce the game rules and get them banned from the game. Relying on the promises made by InnoGames about the game-rules Plaintiff felt confident that when sharing her photograph with just one individual it would remain private. This was to her detriment because a moderator was able to access the photograph, breaching Plaintiff's privacy, but also sent it to the people plaintiff sought to prohibit from having it by relying on the game-rules.

143. Plaintiff also relied on the statements of fairness when she was told and did ignore the players harassing and discriminating her and that they would be held accountable if they continued their harassing behavior. In fact, the players were not punished for their continuous breach of the rules and plaintiff suffered as a result of her reliance on the promises to "ignore" the harassers. Plaintiff lost the opportunity to confront her harassers and thereby lost reputation and social-contacts through the effort.

144. It was reasonable to rely on InnoGames, Hendrik Klindworth's, Michael Zillmer's, Julie Blan's and Richard Stephenson's statements that the game rules would be enforced fairly because they made the statements in writing and even indicated that it was one of the company's "core values."

145. The damages again for this lack of enforcement of their promise were foreseeable because InnoGames specifically addressed the concern of loss of a private photograph as well as the harassment over the photograph as "endangering" in their Terms and Conditions.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-59

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

146. Defenant Julie Blan, on behalf of InnoGames told Plaintiff on June 27, 2019 that Plaintiff could play under any other account, other than the TwoCents account, so long as she played by the rules. Plaintiff relied on these promises to continue her gameplay and purchases with InnoGames, but these promises were not true.  In fact, InnoGames had a policy of banning TwoCents that was discussed amongst its community managers and released to other gameplayers who have stated that they can send screenshots of Community Managers saying Plaintiff would be banned out of the game on any account.

**Copyright Infringement**

147. Plaintiff repeats and realleges paragraphs 1 through 146 hereof, as if fully set forth herein.

148. InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph. Plaintiff created the image on or around July 25, 2016. Shortly thereafter an InnoGames moderator improperly accessed the report system from Plaintiff's private account with InnoGames, intercepted the private conversation including the link to the photograph, and then copied and transmitted this link to other parties.  Plaintiff sent the image only to the player known as "Gensmoky" with a written agreement between Plaintiff and Gensmoky that he would keep it confidential and not disclose it.  At no time did Plaintiff publish the image.  Plaintiff registered the image with the United States Copyright Office on September 03, 2019.

149. These other parties, some of whom are known and some who are unknown then transmitted the photograph without Plaintiff's consent across InnoGames servers and made it public by copying images of it from the original link-site for their own personal use and transmission. Plaintiff was not made immediately aware of when the transmission

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT-*60

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

occurred. She was told sometime after the fact. Additionally InnoGames sought to cover-up the fact that the copyright infringement and privacy breach occurred at all and directly lied to plaintiff saying their moderators had not transmitted the photograph. Even if their moderator had not transmitted the photograph at that time, the photograph was being transmitted across InnoGames servers and is still being transmitted across InnoGames servers via links to it.

150. InnoGames has a duty to supervise its employees in the course of their conducting business, but also has a duty to supervise its servers to prevent the illegal transmission of copyrighted material. InnoGames acknowledges that it tries to prevent this by enforcing the *Forge of Empires* Game Rules and the Terms and Conditions.

151. 17 U.S.C. § 504 allows compensation for damages of copyrighted material before it is registered if there were actual damages or lost profits.  The actual damages in this case are the reputational damages caused to Plaintiff from the loss of an image that was meant to be kept confidential.  See e.g. *Harper & Row, Publrs. V. Nation Enters.*, 471 U.S. 539 (1985) (finding the copyright holder had an "interest in confidentiality").  Just as damages for a breach of a non-disclosure agreement contemplate the harm caused by making public intellectual property that was meant to be private, here too Plaintiff's intellectual property was disclosed to the public causing her to suffer harassment and reputational harm. And it caused Plaintiff to spend money in *Forge of Empires* to try and remediate these harms.

152.  Statutory damages also exist in this case because the photograph has been transmitted to people over InnoGames servers after the image was registered. At least until March 2, 2021, it was being transmitted through the *Forge of Empires* videogame.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-61

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**Intercepting Electronic Communications: State and Federal Claims**

153. Plaintif repeats and realleges paragraphs 1 through 152 hereof, as if fully set forth herein.

J.

154. **STATE LAW RCW 9.73.030:** Plaintiff further asks for damages for privacy violations by the theft of the photograph and copying and releasing of plaintiff's private conversation and photograph  under statutory law. Specifically, RCW 9.73.030 prohibits intercepting, recording, or disclosing a private communication transmitted "within or without the state" by electronic means without the consent of all parties of the communication.  RCW 9.73.060 provides a private right of civil action for such a violation including actual damages including mental pain and suffering due to the violation or liquidated statutory damages of $100 per day up to $1,000 plus attorney fees and litigation costs.

155. An InnoGames employee intentionally intruded on a private conversation in order to interfere with her right of keeping private her conversations and photograph.  The employee then disclosed this photograph to the public. InnoGames, has liability for the acts of its agents.  The conversation in which the photograph was transmitted occurred between Plaintiff, while she was in Washington, and Gensmoky, who was in Virginia at the time of the conversation.  The moderator did not have permission from either Plaintiff or Gensmoky to intercept and disseminate the photograph.  Although *State v. Fowler*, 157 Wash.2d 387, ¶ 16, 139 P.3d 342 (Wash. 2006) does state that the location of a recording of a conversation is determined at the location of the recording, here there was no such recording, rather it was the interception and dissemination that affected and harmed a Washington State resident, bringing it under the criminal jurisdiction of RCW 9A.04.030(5) ("A person who commits an act without the state which affects persons or property within the state, which, if committed within the state, would be a crime.").

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-62

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Further, unlike in *Fowler*, here there is no indication that the interception and dissemination of the photograph would be legal in any state, nor in Germany where defendants reside as *neither* party consent to the interception. All fifty states, plus the District of Columbia criminalize this action.[9]  Similarly, the German Data Protection Act ("Bundesdatenschutzgesetz" or "BDSG") has been in place since 1978 and provides a private right of action for interception and dissemination of private communications and the General Data Protection regulation of the European Union applies as of 2018.

156. **FEDERAL LAW 18 U.S.C. § 2510 *et seq.*** In addition to being a violation of Washington State law, this is also a violation of federal law. 18 U.S.C. § 2510 *et seq.* otherwise known as the Electronic Communications Privacy Act prohibits interception and dissemination of electronic communications which includes "signs, signals, writings, images, sounds, data, or intelligence of any nature…" Recovery of civil damages is similarly authorized under § 2520 of that section or statutory damages.

157. Hendrik Klindworth, Julie Blan and Richard Stephenson are responsible for this intrusion because they had a duty to supervise and create a design where moderators could not intrude in such a fashion.

158. This intrusion would be highly offensive to a reasonable person because it involved taking photographs of an intimate nature without permission. Further the general public would not have been free to view these photographs without this intrusion.

159. This intrusion caused damages in the loss of the photograph as described above.

---

[9] https://www.upcounsel.com/audio-surveillance-laws-by-state.

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-63

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

160. Plaintiff respectfully asks for actual and statutory damages because of the privacy violation in accessing a private communication and taking a copy of the photographic link contained within it.

**Intimate Image Dissemination**

161. Plaintiff repeats and realleges paragraphs 1 through 160 hereof, as if fully set forth herein.

162. Washington State law prohibits disclosing an intimate image under RCW § 9A.86.010.

163. Washington State law creates a civil remedy under RCW §§ 7.110.010–7.110.902 for intimate image unauthorized disclosure.[10]

164. Defendant InnoGames's agent, a moderator, senior moderator, or community manager, improperly accessed an intimate image of Plaintiff's and distributed it by releasing confidential information from her gaming-account accessible only with moderator-level access. This image was also the result of extortion where Plaintiff sent it because others told her she had to send it or suffer consequences to her expensive gaming account due to the unsafe and harassing environment created by Defendant's pornographic advertisements.

165. The transmitted image was an intimate image because it shows Plaintiff's breasts in a bra with the areolas and nipples visible upon zoom-in.

166. Plaintiff sent the image via InnoGames "whisper" function to Gensmoky with the express written agreement that Gensmoky would keep it confidential. Gensmoky did keep it

---

[10] This law took effect July 23, 2023. The doctrine of *ex post facto* does not apply to civil remedies. *Forster v. Pierce Country*, 99 Wn.App. 168, *178, (Wash. Ct. App. Div. 2, 2000) (citing *Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S. Ct. 2072 (1997)) ("If a law is not 'criminal' or 'punitive,' it can be applied to any conduct, either past or future, without violating the ex post facto clause.").

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-64

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

confidential. These are circumstances that create a reasonable expectation of privacy in the image.

167. The image is identifiable of Plaintiff because it contains a written note with Plaintiff's well-known pseudonym signature and it was distributed by people who connected it with Plaintiff's pseudonym and real name.

## VIII.   PRAYER FOR RELIEF

168. Plaintiff respectfully prays for relief as follows: Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws. The Plaintiff also prays for relief and seeks the greater of actual and statutory maximum damages for copyright infringement, the greater of compensatory and statutory for interception and dissemination of an electronic communication, and the greater of statutory and compensatory damages for intimate image distribution  Plaintiff also seeks punitive damages, court costs, and interest.

___/s/ Penny Quinteros                      03/06/2024

Penny Quinteros, Esq. *Pro Se*                Date
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-65

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**CERTIFICATE OF SERVICE**

I certify that on the _____6th_____ day of _____March, 2024, I filed this SECOND AMENDED COMPLAINT FOR A CIVIL CASE with the Clerk of the Court, and I hereby certify that I served a true and correct copy of the document as follows:

Representing: InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson:

Diana Siri Breaux, WSBA #46112
315 Fifth Avenue, Suite 1000
Seattle, WA 98104
dianab@summitlaw.com

and Alan Behr (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

☐ By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid envelope, addressed as shown above, which is the last-known address for the party, and deposited with the U.S. Postal Service at Renton, WA, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be HAND-DELIVERED by _____ to the party, at the address listed above, which is the last-known address for the party's office, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be FAXED to the party, at the fax number shown above, which is the last-known fax number for the party's office, on the date set forth above.

☒ By causing a full, true and correct copy thereof to be EMAILED to the party(s), at the email address(es) shown above, which is the last-known email address for the party's office, on the date set forth above.

/s/ Penny Quinteros 03/06/2024
By: Penny Quinteros, Esq. *Pro Se*
The UPS Store #4579
14201 SE Petrovitsky Rd A3-102

*PLAINTIFF PENNY QUINTEROS'S SECOND AMENDED COMPLAINT*-66

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

Penny Quinteros
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net