1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7  PENNY QUINTEROS,                          CASE NO. C19-1402RSM

8                          Plaintiff,        ORDER GRANTING
                                             DEFENDANTS' SECOND MOTION
9         v.                                 TO DISMISS

10  INNOGAMES, et al.,

11                         Defendants.

12

## I.       INTRODUCTION

This matter comes before the Court on Defendants InnoGames GmbH, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson's Second Motion to Dismiss. Dkt. #114.  Plaintiff Penny Quinteros opposes and requests oral argument.  Dkt. #122.  The Court has determined oral argument is unnecessary and that it can rule based on the existing record.  For the reasons stated below, the Court GRANTS Defendants' Motion and dismisses all of Plaintiff's claims without leave to amend.

## II.      BACKGROUND

*Pro se* Plaintiff Quinteros filed this action in 2019. Dkt. #1.  The Court first granted a motion to dismiss (brought by a single Defendant) on July 1, 2020.  Dkt. #34.  Plaintiff was given leave to amend.  The Court granted a second motion to dismiss on March 28, 2022, this time brought by all Defendants.  Dkt. #94.  Leave to amend was not granted.  Plaintiff appealed.

On January 8, 2024, the Ninth Circuit affirmed in part and reversed in part. Dkt. #100. The panel ruled that "the district court properly found Quinteros failed to state a claim as to all the claims raised in the complaint." *Id*. at 3. The Ninth Circuit concluded, however, that the Court abused its discretion in denying Plaintiff leave to amend, and reversed and remanded so that she could be "given more than one opportunity to cure the deficiencies in her pleading" considering "the liberal standard we apply to pro se litigants." *Id*. at 11.

Plaintiff Quinteros has now filed a "Second Amended Complaint." Dkt. #104. Plaintiff adds introductory argument, updates the procedural history, adds background facts, adds more specifics within her previously dismissed claims, and adds three new claims: the common law tort of Invasion of Privacy through Public Disclosure of Private Facts, Intercepting Electronic Communications in violation of RCW § 9.73.030, and 18 U.S.C. § 2510 *et seq*., and Intimate Image Dissemination in violation of RCW § 9A.86.010 and §§ 7.110.010–7.110.902. *See id*. Plaintiff informs the Court that she is now a licensed attorney in Washington State. *Id*. at 11.

For purposes of this Motion, the Court will accept all facts in the latest Amended Complaint, Dkt. #104, as true. The Court will briefly summarize the relevant facts.

Defendant InnoGames—a German business entity—created an online video game known as "Forge of Empires." *Id*. at 11–12. The individual Defendants are officers and employees of InnoGames. *Id*. at 12–13. Forge of Empires is played via internet browser or mobile app. The person playing the game (a "user" or "player") builds a city starting in the Stone Age and progressing through history. There is significant interaction between online players within the game over chat and other message systems. *Id*. at 15. Forge of Empires is free to play, but includes obstacles to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases. The in-game currency, "diamonds," is purchased in the game via AmazonPay, Paypal, or a direct

credit-card purchase.  *Id.*  Plaintiff alleges that Forge of Empires "is designed to promote excessive game-play by penalizing infrequent play."  *Id.*  The evidence of this is:

> …instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

*Id.* at 15.

Plaintiff alleges that "moderators" she encountered in Forge of Empires are InnoGames employees.  *Id.* at 15.  There is a hierarchical system with "moderators," "senior moderators" and "community manager" titles.  Each level has more supervisory authority over the level below it.  Openings for these roles are advertised with announcements to the community of players.  *Id.*  The moderators, senior moderators, and community managers respond to various customer service complaints with "Support Tickets" or emails.  The moderators, senior moderators, and community managers handle issues such as password recovery, technical support, billing disputes, reports of cheating, game glitches and bugs, general game-play instruction, and breach of rule complaints.  *Id.* at 16.  The community managers work either full-time or part-time.  The moderators and senior moderators are compensated with in-game currency.  *Id.* at 16.  The community managers are paid with the currency of their country.  *Id.* There are no "customer service" agents at InnoGames, instead the customer service role is given the title "moderator" "senior moderator" or "community manager."  *Id.*

Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play."  *Id.* at 18.

Plaintiff maintains that the game is psychologically addictive and that she became psychologically dependent or addicted. *Id.* at 48. Plaintiff alleges that instead of warning players of the addictive nature of the game, InnoGames exploited players with "micro-transactions." *Id.* Relying on representations made by InnoGames that the game was fair, Plaintiff sought to excel at the game. Her dependence on the game and/or desire to progress resulted in her spending over $9,000 on micro-transactions. *Id.* at 43.

Around July of 2016, Plaintiff began experiencing gender-based harassment from other players, including some she alleges "were secretly InnoGames moderators, senior moderators, and community managers." *Id.* at 19. These players and/or "staff members" accused Plaintiff of being a man and started to solicit Plaintiff's online friends and co-players to no longer engage with her socially or for game activities. *Id.* at 19–20. Plaintiff pleads:

> These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

*Id.* at 20.[1] Plaintiff alleges that Defendants were involved in continued harassment through their efforts as moderators of the game's chat feature. *See, e.g., id.* at 23 ("Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff."). Statements made by other players to Plaintiff included "'what you are is a dumb sluuuuut,'"'"butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps

---

[1] Plaintiff alleges she registered a copyright for this photo of "her breasts in a somewhat see-thru bra" three years later, on September 3, 2019. Dkt. #104 at 60. The photo has been filed as an exhibit by Defendants. *See* Dkt. #116. The Court denied a motion to seal this exhibit. Dkt. #118. That Order described the image as "a photograph depicting Plaintiff Ms. Quinteros' upper torso in an opaque, teal sports bra covering her entire chest." *Id.* Where a sports bra would naturally dip down in front, Plaintiff tucked in a note covering all exposed skin. The note reads, "fuck off [unintelligible] Macy, DD, and the [unintelligible] Love, TwoC[ents]." *Id.*

sending them photos." *Id.* at 22.   The names or monikers of the harassing players/staff members are not alleged.   Plaintiff alleges she has been targeted by unnamed moderators "because she doesn't display 'typical female' behavior." *Id.*   A game moderator accused Plaintiff of having a "vulgar upbringing."   Other game moderators accused Plaintiff of "drama" or allowing her emotions to run high. *Id.* at 23.

Plaintiff believes that the above behavior occurred, at least in part, because InnoGames advertised the game with "sexually explicit advertisements" which "created an unsafe environment for women players." *Id.* at 24.

Plaintiff reported her continued harassment to InnoGames and at least some of the individual Defendants.   Plaintiff believes that the harassment violated InnoGames' Terms and Conditions for playing Forge of Empires,[2] but that Defendants failed to prevent the harassment. Plaintiff alleges that instead of acting to protect her, Defendants discriminated against her, enforcing rules disproportionately against her because of her gender, changing rules, and enforcing certain rules against her alone.

In reporting this harassment, Plaintiff, for whatever reason, also engaged in harassing and offensive language.   This is demonstrated in her own attachment to her first Amended Complaint.   Examples of harassment have previously been highlighted by Defendants:

> Among the profane attacks Plaintiff made on InnoGames moderators and managers, were statements such as "F**k that, give me the number you dirty mother f***ing rancid p***y licking f**k". Dkt. #54 at 264 (asterisks added). Plaintiff threatened to change her username to 'Pancea3 s**ks d'…" Dkt. #54 at 374 (asterisks added). In perhaps her most profane and offensive attack on support staff, Plaintiff wrote "YOU are a dirty filthy b**ch. You f**king get down on your knees and s**k the rancid d**ks of

---

[2] Forge of Empires operates under game-specific terms and conditions, community standards, and in-game rules. Moderators explained to Plaintiff how InnoGames handles rule violations: players are first given warnings, and each warning gives them six "points."   Once a player has acquired twenty-four points, they are given a temporary ban. Dkt. #54 at 281, 311.

> other players. Or let them shove their fists up you're a**s because
> you don't have a single brain-cell left. Apparently there is quite
> seriously a thing as being "f**ked stupid." You're living proof."
> *Id*. at 1350 (asterisks added).

Dkt. #64 at 8–9 (citing Dkt. #54).  This is language directed at Innogames support staff—not other players—through an online customer support system.  Responding to that last "down on your knees" example, Innogames support staff stated "[w]e have, repeatedly, asked you not to curse or verbally abuse our team…. whilst as a customer you have a right to service, you don't have a right to verbally abuse our team under any circumstances…. To draw a real world comparison, if you walked in to your local grocery store and verbally abused staff, the management has the right to remove you from their premises."  Dkt. #54 at 1350-51.  Eight minutes later, Plaintiff wrote, "I have not, once verbally abused any member of your team. On the other hand you have, repeatedly asked me to modify my mode of address to a form of power as a method of silencing my rights as a woman. [citation to a Dame Magazine article]…. This is your final warning."  *Id*. at 1351.  The argument between Plaintiff and customer support continues for several pages.[3]

Plaintiff's Second Amended Complaint brings causes of action for "negligence, gross negligence;" "invasion of privacy by publication;" "defamation/libel/slander;" "intentional infliction of emotional distress, negligent infliction of emotional distress;" "gender discrimination in public accommodation;" "fraud, misrepresentation/deceit, unfair and deceptive trade practices;" "product liability;" "breach of contract, third-party breach of contract, promissory estoppel;" "copyright infringement;" "intercepting electronic communications: state and federal claims;" and "intimidate image dissemination."  Dkt. #104.

---

[3] Although Plaintiff has filed a new Complaint, and never included the above customer service exchange in the body of her pleadings, it was attached to a prior pleading by Plaintiff, previously discussed in a Court Order, and cannot be unseen by the Court.

She seeks "Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws," as well as statutory and punitive damages and other unspecified damages. *Id*. at 65.

Defendants again move to dismiss all claims under Rule 12(b)(6). Dkt. #114.[4]

## III.    DISCUSSION

### A.  Legal Standard under Rule 12(b)(6)

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the

---

[4] Defendants have also moved for dismissal based on lack of personal jurisdiction, as they have before. Dkt. #114 at 10–13. The Court again finds that it need not address this argument as dismissal of all claims is appropriate under Rule 12(b)(6).

challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. Analysis**

### 1. Plaintiff's Addition of Three New Claims without Leave

Defendants argue Plaintiff has improperly added three new claims without leave: invasion of privacy by publication, intercepting electronic communications, and intimate image dissemination. Dkt. #114 at 13 (citing *Benton v. Baker Hughes*, 2013 WL 3353636, *3 (C.D. Cal. June 30, 2013), *aff'd sub nom., Benton v. Hughes*, 623 F. App'x 888 (9th Cir. 2015) ("The addition of [the plaintiff's] new claims therefore exceeds the scope of the leave to amend granted, and it is appropriate to strike the newly added claims on this basis."); *Expeditors Int'l of Washington, Inc. v. Santillana*, 2023 WL 8449165, *3 (W.D. Wash. Dec. 6, 2023) ("[Plaintiff's] opportunity to amend its declaratory judgment claim was not an invitation to trot out new legal theories based on the same well-worn factual allegations.")).

In response, Plaintiff argues, "the Ninth Circuit determined that the District Court had abused its discretion in not allowing liberal leave to amend, and gave the Plaintiff leave to amend deficiencies in the complaint without stating leave to amend only certain portions of the complaint." Dkt. #122 at 13. She cites *Fontana v. Haskins*, 262 F.3d 871, 877 (9th Cir. 2001) for the proposition that "[s]pecific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."

On Reply, Defendants state, "[t]he plain language of the [Ninth Circuit's] Order only provides for an amendment limited to the deficiencies in the already pled claims." Dkt. #123 at 4 (citing to the same language above). Defendants point out that *Fontana, supra*, is not applicable because Plaintiff did not plead "new legal theories," instead she added "new causes of action–invasion of privacy by publication, intercepting electronic communications, and

intimate image dissemination–the elements of which were not plead at all in Plaintiff's [First Amended Complaint]." *Id*. at 5.

Plaintiff has previously amended her pleadings, originally filed in 2019. The Ninth Circuit reversed the Court's 2022 decision not because the Court improperly cut off Plaintiff's ability to add new claims, but because "additional *facts*" could be added "to cure the various deficiencies *identified above*," and "Quinteros should be given more than one opportunity to cure the deficiencies in her pleading." Dkt. #100 at 11 (emphasis added).

Defendants are correct that the plain language of the Ninth Circuit's Order reverses only the Court's failure to allow Plaintiff to add facts to cure the deficiencies identified above. There is no mention of opening the door to new claims years after this case was originally filed. Plaintiff sets forth no valid legal argument for adding new claims under these circumstances. Viewing the procedural history of this case in its entirety, the addition of new claims now is unreasonable given Plaintiff's previous opportunities to amend, would constitute undue delay, and would otherwise prejudice Defendants. These claims are properly dismissed on procedural grounds and without leave to amend.[5]

### 2. Negligence/Gross Negligence

In order to recover for negligence, a plaintiff must show that (1) defendants owed her a duty, (2) defendants breached that duty, (3) an injury resulted, and (4) the breach was the proximate cause of the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013)

---

[5] The Court also notes Defendants' arguments about the futility of these claims, or that they should be dismissed under Rule 12(b)(6). *See* Dkt. #114 at 14–20. These arguments have merit. For example, Defendants argue that the "intimate image" in question cannot constitute an intimate image under the statute RCW 7.110.020, that the statute went into effect in 2023, and that it cannot apply retroactively. Defendants argue that the other two new claims suffer similar fatal issues, *e.g.*, that Plaintiff does not have a reasonable expectation of privacy to an image that she copyrighted and to which she chose to identify herself as the author, and that Plaintiff consented to interception of her communications on InnoGames' platforms when she agreed to the Terms and Conditions mentioned in her Second Amended Complaint and incorporated by reference. *Id*. If these claims were not being dismissed on procedural grounds, the Court would dismiss them for lacking sufficient factual content, consistent with other pleaded facts, to allow the Court to draw the reasonable inference that Defendants are liable.

(citing *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)).  "Gross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care."  *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018).

The Second Amended Complaint repeats allegations from the First Amended Complaint: "sexually explicit advertisements" promoting Forge of Empires created "an unsafe environment for women players;" negligent supervision of "moderator-players," negligence *per se* for failing to protect her "private conversation and photograph-link reported to them," "unsafe advertisements," and other complaints related to conduct from other users of Defendants' game.  These allegations have been amended following the Ninth Circuit ruling with additional details about the role of moderator-employees.  *See* Dkt. #104 at 26–27. Plaintiff discusses violations of other laws within this cause of action.  For example, Plaintiff alleges InnoGames is liable for its employees who "illegally accessed and distributed Plaintiff's intimate image for the purpose of insulting, embarrassing, and harming Plaintiff and damaging her interest in her intellectual property remaining confidential."  *Id*. at 26.

Plaintiff alleges that InnoGames had notice of the kind of claims she is bringing now:

> …Chase Xander had accused InnoGames in a lawsuit of moderators sexually harassing her, discriminating against her on the basis of gender, and threatening her and her family. The lawsuit was filed May 6, 2016, two months before Plaintiff was injured, and Ms. Xander had been making reports to InnoGames at least since March of 2014, two years before Plaintiff was injured. The policies put in place to prevent inappropriate access were demonstrably inadequate and this fact was known to InnoGames, Hendrick Klindworth, Michael Zillmer, and Julie Blan during the period of time they had a duty to supervise their employees to prevent them from targeting Plaintiff and inappropriately accessing her account.

*Id*. at 25.

Despite the amendments, Plaintiff's negligence claims remain speculative and vague. Plaintiff fails to allege how Defendants were negligent or vicariously negligent for moderators sharing her private conversations within Forge of Empires and an image she herself uploaded to Forge of Empires. Plaintiff has not plausibly pled a duty owed to Plaintiff *not* to review her conversations or the photo she uploaded, or that Defendants breached such a duty, or that such a breach caused her injury other than being insulted by unnamed third parties. To the extent Plaintiff alleges Defendants were negligent in their supervision of the moderators, she has not adequately pleaded that any of the Defendants knew or should have known that moderators would pose a risk of danger to her. There is insufficient factual pleading to plausibly establish a special relationship between InnoGames and Plaintiff for a heightened duty of protection. In sum, these allegations, even after amendment, strain credulity and remain inadequate under *Twombly/Iqbal*.

The Court further agrees with Defendants' arguments that "there is no vicarious liability because the moderator acted outside the scope of his duties and not on behalf of his employer," that "there is no evidence that InnoGames authorized, instructed, or had any purpose to further the spreading of the [sports bra photo]," and that "[a]s alleged, the unnamed moderator acted on her own accord, based on her own personal animus, and accordingly, vicarious liability cannot attach to Defendants." Dkt. #114 at 25. Defendants adequately distinguish the facts of the *Xander* case with those encountered by Plaintiff, negating the idea that such could adequately put Defendants on notice of the unique and bizarre circumstances alleged in this case. *See* Dkt. #114 at 26.

Even accepting all facts in the Second Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, the Court cannot draw the reasonable

inference that Defendants are liable for negligence or gross negligence.  Accordingly, dismissal is warranted under Rule 12(b)(6).

### 3.   Defamation/Libel/Slander

A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages.  *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). A false written statement is considered libel, a false spoken statement is slander.

Plaintiff pleads that Defendants' "agent, a moderator, senior moderator, or community manager, committed a sexual-based crime against defendant when they disclosed her intimate image without consent for the express purpose of creating sexually explicit and harassing comments against Plaintiff. Because the crime was committed with the express purpose of creating the harassment, InnoGames has legal liability for the resulting statements."  Dkt. # 104 at 32.  Plaintiff lists twelve statements, including: "2C[TwoCents] is a tranny?"; that Plaintiff "failed in lawschool [sic];" that Plaintiff was a man and not a woman; and that Plaintiff was in a "sad loveless marriage."  *Id*. at 32–33.  The authors of these statements are not pleaded. The location and time of these statements are not pleaded.  Plaintiff continues to plead that "defendants Julie Blan and Richard Stephenson directly committed libel and damaged plaintiff's reputation when they made defamatory remarks that the plaintiff was 'crazy,' 'a liar,' and disparaged plaintiff's mental status in their InnoChat conversations, Skype conversations and emails amongst other Community Managers and player-moderators." *Id*. at 33.

Defendants previously argued that a defamation claim "must be based on a statement that is provably false," Dkt. #64 at 18–19 (citing, e.g., *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 590, 943 P.2d 350 (1997); *Herron v. KING Broadcasting Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989), and that the statements from Defendants at issue are "matters of opinion," *id*. at 19.

The Court continues to agree with Defendants' analysis with regard to the statements that Plaintiff was "crazy" or "a liar." Dismissal of these claims was affirmed by the Ninth Circuit, which stated, "[r]ead in context, these statements are nonactionable insults." Dkt. #100 at 6. The same can be said about Plaintiff's newly added defamatory statements. Accepting all facts in the Second Amended Complaint as true and making all *reasonable* inferences in the light most favorable to Plaintiff, these claims fail because such statements could not plausibly be considered statements of false truths.

More critically, the new statements lack the requisite details of time and place in which they were made. Plaintiff does not identify the speaker, to whom they were made or even when they were made, which is cause for dismissal. *See Lutz v. Spokane Reg'l Health Dist.*, 2023 WL 8005297, *12 (E.D. Wash. Nov. 17, 2023) (dismissing claim that did not allege "the basic factual details that would allow the Court to evaluate the sufficiency and plausibility of his claim—for example, who made the statements, and where/when/to whom they were made."); *Phillips v. Oklahoma Pub. Co.*, 2011 WL 4914944, *3 (W.D. Wash. Oct. 14, 2011) (same). If Plaintiff does not know who made these statements, or to who, or when, or under what circumstances, it is hard to imagine how she could have been injured by them. There are insufficient facts pled as to loss of reputation. Defendants also contend that "the alleged third-party players' taunting of Plaintiff… could not plausibly be considered to be statements of false truths (that is, libelous declarations) as opposed to invective, opinions and unpleasantries in the category of those Plaintiff admits she sent to rattle opposing players." The Court agrees.

### 4. Emotional Distress Claims

A party may recover for negligent infliction of emotional distress "in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by

objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013) (citation omitted).  Plaintiff fails to state a claim for negligent infliction of emotional distress because the Court has found an absence of negligent conduct.  *See Bylsma*, 176 Wn.2d at 560.

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Lyons v. U.S. Bank NA*, 336 P.3d 1142, 1151 (Wash. 2014).  "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*.  This tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).

The Court dismissed Plaintiff's Amended Complaint as to these claims, and the Ninth Circuit affirmed.  Plaintiff has amended only to add the following: "[i]t is outrageous conduct for a company to advertise their unknowing female players up as sexual pawns for their male-based demographic to sexually assault and then refuse to take action when a sex-crime occurs as a result of their pornographic advertisements."  Dkt. #104 at 35.  The Court finds this sentence implausible, untethered to the pleaded facts, and otherwise legally and factually insufficient to overcome the previous bases for dismissal of these claims.  These claims are again dismissed.

### 5.   Gender Discrimination in Public Accommodation

This claim lacks citation to any specific federal or state law even after repeated amendment.  The Court again assumes that Plaintiff's claim is brought under the Washington Law Against Discrimination, RCW § 49.60.215.  The Court dismissed Plaintiff's Amended Complaint as to this claim, and the Ninth Circuit affirmed.  Plaintiff has amended only to add the following:

1
2
3
4

Defendants InnoGames, Hendrik Klindworth and Michael Zillmer advertised their female players for sexually-based crimes to encourage a male demographic to join the game. They also created a moderation system that allowed moderators to access and disseminate intimate images of female players for the purpose of sexually harassing them.

…

5
6
7

InnoGames also made it a policy to ban Plaintiff from playing the game on any world at any time because she filed a lawsuit alleging sexual discrimination against them after then told Plaintiff she had the "right to play under any other account [other than TwoCents]" on June 27, 2019.

8

Dkt. #104 at 38–39.

9

10

11

12

13

14

15

16

The Court continues to find that Plaintiff has failed to plead facts showing how Defendants could identify her or other users by their gender. Plaintiff has failed to plead facts plausibly indicating that Defendants treated her differently based on her gender. The Second Amended Complaint and attachments previously filed by Plaintiff paint a richly-detailed portrait of Defendants' response to Plaintiff's complaints of gender discrimination, and the Court finds such a claim to be implausible given Defendants' repeated attempts to respectfully respond to Plaintiff's harassing and abusive customer service requests. This claim is dismissed under Rule 12(b)(6).

17

**6. Fraud, Misrepresentation/Deceit**

18

19

20

21

22

23

24

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A fraud claim is adequately pled only if it "informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 165, 744 P.2d 1032, 1069 (1987), *amended*, 109 Wn.2d 107, 750 P.2d 254 (1988). "General statements about material misrepresentations and fraudulent actions do not provide the required who, what, when, where,

and how of a properly pleaded fraud claim." *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wn. App. 220, 232 (Wash. 2016) (internal citations omitted).

The Court previously dismissed this claim for lack of particularity and for failing to plausibly allege that Defendants engaged in fraud by changing its terms and conditions in order to target Plaintiff directly. The Ninth Circuit affirmed. Dkt. #100 at 7–8. The panel summarized Plaintiff's fraud claim as alleging that "Defendants represented that game rules on the *Forge of Empires* platform would be applied fairly when they were applied unfairly" without alleging with particularity Defendants' statements made to her, who made these statements, when, and how she was deceived. *Id.*

Plaintiff has added roughly two pages of additional pleading to this claim. *See* Dkt. #104 at 40–41. Plaintiff lists several lines from the Terms of Service, including that "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate" and similar statements against harassing behavior. *Id.* Plaintiff alleges that "these statements indicate that InnoGames will not accept the exact type of behavior that Plaintiff was the victim of" and that "InnoGames knew that the above statements were false" because they knew "that their moderators did not attempt to enforce the above rules in a consistent fashion" and knew about the *Xander* lawsuit. *Id.*

The Court agrees with Defendants that Plaintiff has again failed to plead fraud with sufficient particularity. She does not identify false statements of fact made by Defendants. Instead, she points to language in the T&C's attempting to regulate user behavior. This kind of language can be found for any online service attempting to avoid the harassing behavior that

Plaintiff allegedly experienced and apparently dished out as well. This language cannot plausibly constitute a false statement of fact because it is written to users to inform them of their obligations, not as a promise of what will not happen on the platform. Plaintiff fails to allege with specificity how Defendants "knew" that its moderators would act in what has otherwise been alleged as negligent behavior. Any fraud claims that were previously included fail for the reasons stated by the Court previously. Accordingly, Plaintiff's fraud, misrepresentation, and deceit claims are dismissed.

### 7. Unfair and Deceptive Trade Practices/Consumer Protection Act Claim

Plaintiff's previous Amended Complaint included within her fraud claim a couple of paragraphs about Unfair and Deceptive Trade Practices, with a reference to Washington's Consumer Protection Act ("CPA"). The Court dismissed this claim and the Ninth Circuit affirmed. Plaintiff has not amended these allegations. *See* Dkt. #104 at 47 and Dkt. #104-1 at 51.

A claim for deceptive trade practices falls within the state's Consumer Protection Act ("CPA"). A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 533 (1986).

A practice is "unfair" under the CPA if it causes injury to consumers "which is not reasonably avoidable by consumers themselves." *Alpert v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 41741, 2019 WL 1200541, *19 (W.D. Wash. 2019) (citing *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179, 1187 (Wash. 2013)). An injury is "reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward

mitigating the injury after the fact." *Id.* at *21 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)).

To support this claim, the Second Amended Complaint states that "these actions" (*i.e.*, everything previously stated in the Second Amended Complaint) violate the CPA "because they are deceptive acts as outlined above…" Dkt. #104 at 47. This type of catch-all pleading leaves the opposing party and the Court in the dark as to what is being alleged and how the many facts of this case injured Plaintiff to support this claim.

The Court finds no reason to come to a different conclusion than before. Taking the pleaded facts as true, they do not demonstrate an unfair practice because any injury to the Plaintiff caused by cheating or unfair play in this game was reasonably avoidable, the harm did not affect the public interest, and it did not cause injury to her business or property. Accordingly, this claim will be dismissed.

### 8. Product Liability

Defendants have previously argued:

> Forge of Empires and other online games are not subject to Washington's products liability law. RCW Section 7.72.010 defines "Product" as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." Forge of Empires is software as a service, not an "object," hence Plaintiff's product liability claim must fail as a matter of law. *See, e.g., James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 811 (W.D.Ky. 2000) (holding videogames not "products" under product liability law), *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 174 (D. Conn. 2002) (same); *Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002); Restatement (Third) Torts: Products Liability § 19 (1998) (product is "tangible personal property distributed commercially for use or consumption.").

Dkt. 64 at 23. The Court continues to agree that Forge of Empires as pled in this case is not a product under the WPLA.

The Ninth Circuit has also pointed out that "Quinteros conclusorily alleges that Defendants created an unsafe product that causes gaming addiction in its consumers. While she identifies certain features of Forge of Empires which she asserts are addictive and harmful, she fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive." Dkt. #100 at 9.

Plaintiff has added only the following to her product liability claim:

> 108. InnoGames designed a product meant to intentionally inflict a mental disorder on Plaintiff. This mental disorder, Internet Gaming Disorder, creates structural and functional abnormalities in the brain of people with the disorder. Plaintiff suffered from this disorder as a result.
>
> ….
>
> 122. InnoGames also sought to continue this intentional infliction of Gaming Disorder on Plaintiff by making unreasonable advertisements to Plaintiff. Plaintiff has seen thousands of ads for Forge of Empires even though she is already a player. Every time Plaintiff opens a computer browser, she sees an advertisement for Forge of Empires. This includes on Plaintiff's work computer where she has never played or been associate with Forge of Empires on. Plaintiff cannot escape the advertisements. Further, InnoGames designed "push" notifications to remind players to log into the game. And InnoGames sends emails to Plaintiff reminding her to come in and play the game.

Dkt. # 104 at 47 and 53 (footnote omitted).

The new allegations continue to be conclusory.  The pleading, even with these additions, fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive.  For all of the above reasons, this claim is dismissed under Rule 12(b)(6).

### 9.  Contract and Promissory Estoppel Claims

To prevail on a breach of contract claim under Washington law, a plaintiff must establish (1) the existence of a contractual duty, (2) defendant's breach of that duty, and that (3)

defendant's breach of that duty caused damages to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).   The doctrine of promissory estoppel serves to enforce "otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261, 616 P.2d 644, 647 (1980).   Where a plaintiff alleges both breach of contract and promissory estoppel claims, "[i]t may be proper to dismiss a promissory estoppel claim when 'an undisputedly valid and enforceable written contract governs the same subject matter.'" *Neravetla v. Va. Mason Med. Ctr.*, No. C13-1501-JCC, 2014 U.S. Dist. LEXIS 200668, 2014 WL 12787979, *7 (W.D. Wash. Feb. 18, 2014) (quoting *Air Atlanta Aero Engineering Ltd. V. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009)) (emphasis added).

The Court previously dismissed these claims for failure to plead a material breach of the Terms and Conditions by Defendants proximately causing damages to Plaintiff.   The Ninth Circuit affirmed, finding that "Quinteros fails to plausibly allege the existence of a contract between her and Defendants, which imposed an obligation on Defendants to refrain from transmitting images or engaging in verbal harassment," and that "none of the allegations in the complaint represent that Quinteros is a third-party beneficiary of an agreement between Defendants and other users." Dkt. #100 at 9–10.   The Ninth Circuit found that "Quinteros fails to allege a clear and definite promise. She alleges only that she "relied on [unspecified] statements of fairness" for her promissory estoppel claims." *Id*. at 10.

Plaintiff's substantive new allegations are as follows:

> InnoGames, in its Forge of Empires Game Rules states that "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive…. This is an explicit contract with Plaintiff wherein InnoGames creates a duty for itself not to accept the material stated. This contract was written by InnoGames and is a contract of adhesion, which should be strictly construed against InnoGames.

This contract was breached when InnoGames accepted the publication of harassing statements and Plaintiff's intimate image.

….

Maestro, a senior moderator, told Plaintiff on January 17, 2017 that the Game Rules were in place to provide a high quality game and fair disposition to *all* players. (emphasis added).

….

In the Terms and Conditions, players agree to abide by the Game Rules…. As stated above, the Game Rules are intended to benefit other players and provide other players with a quality and fair game.

….

Even if no contract was made, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that the game rules were fair and would be enforced equally: a. "In short, the rules are in place to ensure fair disposition for all players, single household or otherwise." – Seriak (a moderator for Innogames) June 3, 2016. b. "Following the rules helps to create a fun and fair environment for everyone." – Julie Blan aka Panacea November 11, 2016. c. "It was your responsibility to read and understand the rules of the game. You failed to follow the rules and you were subsequently banned for a [sic] infraction. This is our policy and it is in place to ensure fair disposition to all players." – Maestro, a senior moderator, January 1, 2017. d. "These rules can be adapted to different cases in the interests of maintaining fair play within the game." – Julie Blan aka Panacea, May 5, 2017. e. Julie Blan repeated the same statements as above on numerous occasions as identified in Exhibit 10, the Support Tickets. f. "Following the rules helps to create a fun and fair environment for everyone." Julie Blan aka Panacea, May 21, 2017.

….

Defenant [sic] Julie Blan, on behalf of InnoGames told Plaintiff on June 27, 2019 that Plaintiff could play under any other account, other than the TwoCents account, so long as she played by the rules. Plaintiff relied on these promises to continue her gameplay and purchases with InnoGames, but these promises were not true. In fact, InnoGames had a policy of banning TwoCents that was discussed amongst its community managers and released to other

gameplayers who have stated that they can send screenshots of Community Managers saying Plaintiff would be banned out of the game on any account.

Dkt. #104 at 53–60.

In its Motion to Dismiss, Defendants point out that the Terms and Conditions "explicitly provides InnoGames a license to duplicate and make publicly available any use-provided content," and thus Plaintiff "grant[ed] [InnoGames] the free, simple, universal right to duplicate the content and make it publicly available in connection with the Games and in the forums." Dkt. #114 at 31 (citing Dkt. #115-2 at 9). Defendants argue that "once Plaintiff herself put the content on the platform, InnoGames had no obligation to remove the photograph." *Id.* Defendants also argue that the image at issue cannot be "illegal content." Although not strictly necessary for dismissal of this claim, the Court finds that Plaintiff's pleadings as to this image do not match any reasonable interpretation of the image, which is in the record. The image does not show a see-through bra. Defendants also assert that Plaintiff fails to plead damages stemming from the breach of contract. *Id.* Defendants adequately address Plaintiff's third-party beneficiary and promissory estoppel claims. *Id.* at 31–32.

The Court again finds that Plaintiff has failed to plead a material breach of the Terms and Conditions proximately causing damages to Plaintiff. There are insufficient facts to support an obligation on Defendants to refrain from transmitting the image Plaintiff herself uploaded. Plaintiff otherwise fails to allege a clear and definite promise or contractual obligation that could give rise to liability under these circumstances.

As before, the breaches she points to are really breaches of the Terms and Conditions by other users. Failure to maintain a "fun and fair environment for everyone" is too vague to be actionable. The Terms and Conditions did not state "in exchange for your money we promise you a harassment-free environment" or similar language. The harassment by third parties is

outside the scope of a contract claim, Plaintiff has failed to adequately plead that she was the intended beneficiary of a third-party beneficiary contract, and, in any event, Plaintiff has failed to plead how the alleged breaches by Defendants plausibly caused her damages.  Promissory estoppel is inapplicable as there is a contract governing the alleged breaches.  These claims will be dismissed under Rule 12(b)(6).

### 10. Copyright Infringement and Privacy Violation Claims

Plaintiff again pleads that "InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph," that she created the image on July 25, 2016, that an InnoGames moderator "intercepted the private conversation" where she posted the photograph "then copied and transmitted this link to other parties."  Dkt. #104 at 60.  Plaintiff registered the image with the United States Copyright Office on September 03, 2019.  *Id*.

Defendants previously argued:

> In *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Supreme Court held that a claim for copyright infringement may not be filed until after registration. The Copyright Act of 1976 only permits an award of statutory damages or attorney's fees if a copyright registration is issued within three months following publication of the copyrighted work. *See* 17 U.S.C. §412 (2). Plaintiff fails to demonstrate ownership of a valid copyright registration within the time constraints outlined in the statute. *See also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Plaintiff photographed her breasts on July 25, 2016. Immediately thereafter, Plaintiff published the image. Plaintiff did not register the photo with the U.S. Copyright Office until September 3, 2019--more than three years after publication, making her ineligible to receive statutory damages and permitting no claims for damages accruing prior to that date. No such post-registration infringing actions or damages are alleged.

Dkt. #64 at 25–26.  The Court previously agreed that statutory damages and fees are not available, and the Ninth Circuit agreed.  The Court previously found other damages attributable to Defendants under this claim speculative and not plausible, and the Ninth Circuit agreed.

Plaintiff has now added, in paragraph 151 of the Second Amended Complaint, a claim for "reputational damages caused to Plaintiff from the loss of an image that was meant to be kept confidential."   Dkt. #104 at 61.   Plaintiff alleges that her "intellectual property was disclosed to the public causing her to suffer harassment and reputational harm" and that she had to "spend money in Forge of Empires to try and remediate these harms."  She also alleges that statutory damages should be available because it was being transmitted to people over InnoGames after the image was registered.  *Id*.  No further details about that are provided.

Responding to these additions, Defendants first argue that Plaintiff granted InnoGames "a license to under the T&Cs, to copy the content and display it on their platform…" Dkt. #114 at 20 (citing Dkt. #115-2; *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1077 (9th Cir. 2023). Defendants next state that Plaintiff fails to explain who added the photo to InnoGames' server and that InnoGames did not distribute copies of the photo, it at most simply linked to the photo. *Id*. at 21.

The Court finds that Plaintiff's additions to this claim are insufficient to overcome the Court's prior analysis.  Statutory damages continue to be unavailable for the reasons previously stated.  Plaintiff fails to add with any specificity how, when, and under what circumstances the image was shared after it was registered.  Actual damages related to copyright infringement continue to be speculative and implausible.  There are insufficient facts pled as to reputational damage, and the plausibility of such is belied by the surrounding alleged facts—the fact that she chose to upload this photo to prove to others that she was indeed a woman, that the photo delivers a message to specific users to "fuck off," and the PG nature of the photo.  Her requested relief of $500,000 for loss of reputation is untethered to facts and borderline frivolous. Again, the copyrighted photo in question shows Plaintiff's chest with a note tucked into an opaque teal sports bra that reads "fuck off [unintelligible] Macy, DD, and the [unintelligible]

Love, TwoC[ents]."  Dkt. #116.  Calling this intellectual property is a stretch.  Calling it a loss of intellectual property that this photo was shared with other users of Forge of Empires is even less plausible considering all of the above.  The Court is asked at this moment to rule on the plausibility of this claim keeping in mind the above standards, and finds this claim well short of those standards.  This claim is properly dismissed under Rule 12(b)(6).

**C.  Leave to Amend**

The Court finds that Plaintiff has been aware of the majority of the above grounds for dismissal, has already amended her Complaint once, and that the deficiencies above cannot possibly be cured by amendment consistent with the challenged pleading.  This assessment is further supported by the unusually detailed factual record previously provided by the Plaintiff in attachments to her pleadings.

## IV.   CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6), Dkt. #114, is GRANTED.  Plaintiff's claims are DISMISSED.  This case is CLOSED.

DATED this 16th day of September, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 25